Janos HAGL, Plaintiff,

v.

JACOB STERN & SONS, INC., et al.,
Defendants,

and

Industrial Coppersmithing & Metal Work
Company, Inc., Third-Party
Defendant.

Civ. A. No. 71-1401.

United States District Court,
E. D. Pennsylvania.

March 18, 1975.

Miles Warner, Philadelphia, Pa., for plaintiff.

Gilbert E. Toll, Philadelphia, Pa., for defendants.

## OPINION

DITTER, District Judge.

This diversity action was brought by a resident alien to recover for injuries suffered at defendant's plant where he was employed by an independent contractor. After a verdict for plaintiff, a post trial motion was filed asserting the court had no jurisdiction, it was improper to submit interrogatories to the jury for the itemization of damages, the award of $113,151.85 was excessive, and there were errors in evidentiary rulings and the charge.

Jacob Stern & Sons, Inc., and Acme-Hardesty (hereafter "Stern") [1] process fats and greases at a plant in Philadelphia. Plaintiff, Janos Hagl, was employed as a welder by Industrial Coppersmithing & Metal Works Company, Inc., an independent contractor engaged by Stern to do construction work. Industrial's performance was overseen and directed by Thomas G. Brown, a second independent contractor. On December 9, 1969, Hagl was completing a metal catwalk which was designed to give access to the tops of certain storage tanks. Having seen on the ground a section of steel stairway that would help complete the job, Hagl left the catwalk and proceeded toward the point where the material was lying. While approaching it, he fell into an open pit used to collect waste water, fats, and grease. He did not see the pit because its edges were obscured by the dirty colored liquids which overflowed on to the adjacent ground. Usually a steel grating was kept over the pit, but on the day in question it had been moved aside. As a result of his fall, plaintiff suffered personal injuries for which he brought this suit against Stern and Brown. Industrial was then joined as a third-party defendant. At the conclusion of the evidence on liability, I directed a verdict for Industrial. The jury found that Stern was negligent, Hagl was not contributorily negligent, and there was no negligence on the part of Brown. The jury then awarded damages to Hagl in separate amounts for medical expenses, past wage losses, future wage losses, pain, and loss of life's pleasures. Stern's post-trial motion followed.

---

1. Jacob Stern & Sons, Inc., and Acme-Hardesty are jointly controlled. One owns the land on which the plant is situated and the other operates the business. For the purposes of this case, they may be considered a single entity and both were represented by the same attorney.

Defendant first alleges that this court has no jurisdiction because there is no diversity of citizenship. Stern claims to be a citizen of Pennsylvania and that Hagl, though a Canadian, lives in Pennsylvania and is therefore a citizen of Pennsylvania for purposes of 28 U.S.C. § 1332(a)(2).

Article III, Section 2 of the Constitution in defining the diversity jurisdiction of federal courts includes cases and controversies between United States citizens "and foreign States, Citizens or Subjects." This is codified in 28 U.S.C. § 1332(a)(2), which allows an alien the right to sue any United States citizen, whether both are domiciled in the same state or not. Thus an alien enjoys a greater right to bring suit in federal court than that given United States citizens. Among those upholding this construction was Chief Justice John Marshall. In *Breedlove v. Nicolet*, 32 U.S. (7 Pet.) 413, 428 (1833), he held that there is federal jurisdiction even if an alien resides within the same state as a United States citizen. See also *Psinakis v. Psinakis*, 221 F.2d 418, 423 (3d Cir. 1955); *Robinson v. Anastasiou*, 339 F.Supp. 472 (S.D.Tex.1972); Hart and Wechsler, The Federal Courts and The Federal System 1060 (2d ed. 1973); C. Wright, Law of Federal Courts § 24, at 81 (2d ed. 1970). Although *giving* aliens greater privileges then those enjoyed by United States citizens, this interpretation has consistently been applied to diversity actions. It follows that there is no merit in defendant's argument.

Stern next contends the court erred in submitting five interrogatories to the jury so that it would make separate awards for each element of plaintiff's asserted injuries. Prejudice is claimed because these several sums were then added together and judgment entered for their total, an excessive amount according to Stern.

The determination of damages is a factual question to be decided by the jury. *Gardner v. National Bulk Carriers, Inc.*, 333 F.2d 676, 677 (4th Cir. 1964). F.R.C.P. 49 bestows broad discretion upon the court to obtain a general, lump sum verdict, or a special verdict, containing a special written finding of each fact. The form of a special verdict is also within the sound discretion of the court. *Elston v. Morgan*, 440 F.2d 47, 49 (7th Cir. 1971). See *Anderson v. Eagle Motor Lines, Inc.*, 423 F.2d 81, 85 (5th Cir. 1970). The only limitation is that the questions asked of the jury be adequate to determine the essential factual issues. *Kornicki v. Calmar S.S. Corp.*, 460 F.2d 1134, 1139 (3d Cir. 1972).

In this case plaintiff claimed five types of damages and the jury made the following awards: (1) medical expenses, $2,751.85; (2) wage losses from the date of the accident until plaintiff returned to work, $5,400; (3) wage losses from plaintiff's return to work to date of trial, $17,000; (4) plaintiff's future wage losses, reduced to present net worth, $60,000; and (5) pain and suffering, loss of life's pleasure and similar matters, $28,000. There was nothing complicated or extraordinary in these elements. If proved, they clearly flowed out of the accident caused by the negligence of the defendant. Separate questions were posed to simplify the jury's job in deciding the factual question of how much plaintiff was entitled to recover by focusing its attention on the evidence rather than encouraging it to seize upon some nebulous amount. Cf. *Neal v. Saga Shipping Co., S.A.*, 407 F.2d 481, 489 (5th Cir.), cert. denied, 395 U.S. 986, 89 S.Ct. 2143, 23 L.Ed.2d 775, rehearing denied, 396 U.S. 871, 90 S.Ct. 45, 24 L.Ed.2d 129 (1969). Stern complains because the jury stated a separate sum for each aspect of the claim and because the verdict was computed by adding them together. In essence, defendant argues that the only way a jury can reach a correct verdict on damages—thus expressing its feelings on the nuances of

the matter[2] is by a general verdict. Otherwise, the jury can not consider the subtle aspects of a case and the defendant is thereby prejudiced by an inflated verdict. The correct procedure, as outlined by Stern, would have been for me to treat the jury's findings as guides from which I would mold a general and just total for the plaintiff.

■ To state this contention is to refute it. Not surprisingly, no authority is cited to support the proposition that special verdicts are always too high and that the court should arbitrarily reduce them. Moreover, in this case, I do not find the total, $113,151.85, to be excessive[3] because each of the constituent findings was supported by competent evidence.

Of the five, defendant raises no objection to three: that for medical expenses, $2,751.85, loss of earnings during complete disability, $5,400, and loss of earnings after return to work to the date of trial, $17,000. However, Stern does argue that the $60,000 award for lost future earnings and the $28,000 for pain and suffering, loss of life's pleasures, and similar matters were excessive.

The damage portion of the trial took the better part of two days. Besides the plaintiff, the testimony of a doctor, an orthopedic surgeon, the business manager of plaintiff's former union, an official of Hagl's present employer, and an actuary were presented to the jury. The defendant presented no evidence on the question of damages.

■ Defendant primarily complains that I erred in allowing plaintiff to testify that he was qualified to work as an outside construction welder (pipefitter), had intended to seek such work as soon as he had satisfied the minimum membership-time requirement of his union, but could not do so because of his injuries. A construction welder is a more rigorous and difficult occupation, paying substantially more than the simple welding job Hagl had when injured. It is uncontested that Hagl was eminently qualified to be a construction welder. He had the training and many years experience in his native Hungary and Canada doing such work. It was not unreasonable for the jury to find that he could have been a construction welder in this country. The fact that Hagl was not so employed at the time of his accident was not conclusive since he then had several months of seniority to go before the union would allow him to undertake that type job. Impairment of earning power and limitation of potential earnings a plaintiff could reasonably expect are questions for the jury: *Frankel v. Todd*, 393 F.2d 435 (3d Cir.), cert. denied, 393 U.S. 855, 89 S.Ct. 137 (1968); *DiChiacchio v. Rockcraft Stone Prods. Co.*, 424 Pa. 77, 225 A.2d 913 (1967); *Bochar v. J. B. Martin Motors, Inc.*, 374 Pa. 240, 97 A.2d 813 (1953).

■ Plaintiff presented additional testimony that his loss of future earnings, reduced to present worth, would be between a minumum of $39,973 if he continued to work at his old position and a maximum of $133,425 had he worked steadily as a construction welder. The jury awarded $60,000, a reasonable amount suggesting a decision that Hagl

2. Stern contends, for example, that it conducts a socially useful enterprise, is the source of employment for numerous persons, and did not wilfully, or with gross negligence cause plaintiff to be injured. See Defendant's brief at 6.

3. Normally the amount of damages assessed by a jury is within its discretion. *Galard v. Johnson*, 504 F.2d 1198, 1200 (7th Cir. 1974). A verdict will not be set aside unless it is so monstrously excessive as to shock the conscience of the court. *Williams v. Steuart Motor Co.*, 494 F.2d 1074, 1085 (D.C.Cir. 1974); *Frankel v. Heym*, 466 F.2d 1226, 1228 (3d Cir. 1972); *Weaver v. Ford Motor Co.*, 382 F.Supp. 1068, 1076 (E.D. Pa.1974).

would have worked as a construction welder but not all year long.[4]

▮ Stern further objects to the jury's award for pain and suffering and loss of life's pleasures. After reviewing the testimony as to the pain Hagl suffered, the length of time he was disabled, his medical treatment, the loss of his ability to be a professional soccer referee and play soccer with his grandchildren, his difficulty in sleeping, and the impairment of sexual relations with his wife, I conclude that the jury's award of $28,000 was reasonable.

▮ Defendant next contends that it was error to allow plaintiff to alter his claim for damages toward the end of the trial because doing so constituted an unjust surprise. The court has broad discretionary power under F.R.C. P. 15(a) to allow amendments to pleadings, the key requirement being "when justice so requires." Plaintiff's amendment did not introduce any new element of damages—it merely increased the total sought. Had the amendment been refused, the plaintiff would have been deprived of damages he was able to prove to the jury's satisfaction. See *Zatina v. Greyhound Lines, Inc.*, 442 F.2d 238, 242 (8th Cir. 1971); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1474, at 385 (1971). Stern has not suggested how a higher figure in the original complaint would have lead to a change in defense strategy or trial tactics and none occurs to me. I conclude the amendment did not legally prejudice any of defendant's rights and therefore, it was properly allowed.

Stern also claims that I erred in refusing to allow it the opportunity to show plaintiff's standing to sue was clouded because he was in the United States illegally and thus subject to deportation. Stern also contends it should have been allowed to argue to the jury that since Hagl's continuing presence in this country is not assured, recovery for future earnings loss should be reduced.[5]

▮ Contrary to defendant's insinuation, every alien, whether in this country legally or not, has a right to sue those who physically injure him. Each person is entitled to the equal protection of the law. *Sugarman v. Dougall*, 413 U.S. 634, 641–42, 93 S.Ct. 2842, 2847, 37 L.Ed.2d 853 (1973); *Graham v. Richardson*, 403 U.S. 365, 371, 91 S.Ct. 1848, 1851, 29 L.Ed.2d 534 (1971); *Torao Takahashi v. Fish and Game Commission*, 334 U.S. 410, 68 S.Ct. 1138, 92 L. Ed. 1478 (1948); *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). The Fifth and Fourteenth Amendments use the word person not citizen in this context. The idea of equal protection for all has been codified in 42 U.S.C. § 1981 which states:

> All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings . . .

▮ It follows that insofar as liability was concerned, Hagl's status as an alien was irrelevant. Whether he will be deported, leave of his own accord, or obtain United States citizenship might have been relevant in the damages portion of the trial. However, there was no evidence on this point. There was testimony to show he had come to this coun-

---

4. There was testimony that while outside construction welders were paid more, they were not always able to find steady employment (N.T. 6–21 to 24).

5. There was no testimony to support such an argument. During the damages phase of the case, Stern wanted to cross-examine plaintiff as to whether he would have "difficulty" in transferring employment to an employer paying higher wages. At side bar I inquired of Stern's attorney as to whether he was prepared to follow up his cross-examination with any testimony on this subject. He said that he was not. I then offered to let him explore the matter outside the presence of the jury by questions to Mr. Hagl. This offer was not accepted. There had been no pretrial discovery on this issue. I therefore concluded it would be unfair to let Stern dangle an unsubstantiated inference before the jury. (N.T. 7–8 to 11)

try in 1967. At side bar it was explained he had hired an attorney to help in achieving permanent residency status but nothing further had occurred in this regard.[6] No proceedings to deport Hagl had been started as of the time of trial, not was there any indication that such proceedings were contemplated. In short, there was nothing which would have justified the jury's reducing damages because plaintiff is an alien who might conceivably face some unspecified immigation action at an unknown time.

 Defendant next argues that I improperly favored defendant, Thomas G. Brown, in reviewing the evidence during the charge. A trial judge has the right to comment upon the evidence, *Quercia v. United States*, 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933), as long as he does not unfairly prejudice a party. *United States v. Chibbaro*, 361 F.2d 365, 378–79 (3d Cir. 1966). After reviewing my remarks I believe they were balanced and accurate. The jury was repeatedly instructed that it was the sole finder of fact, that its recollection not mine controlled, and that the verdict was for it to decide. Moreover, F.R.C.P. 51 prevents a party from assigning as error any portion of the charge he does not object to before the jury retires. There is no such objection by the defendant in the record.

Finally, Stern contends that I improperly allowed plaintiff to testify that he left Hungary because he was a Freedom Fighter against the Communists during the 1956 uprising. (N.T. 3–59 to 60) Defendant objects to this testimony because it was not relevant, and during this portion of his testimony plaintiff wept, the moment being "highly charged with emotion."

The record shows that it was Stern who first brought up the subject of plaintiff's former Hungarian citizen-

ship and the fact that he had renounced it. (N.T. 2–145 to 148) This was done during the liability portion of the trial. The questions asked by plaintiff's counsel on redirect the next day were simply to explain to the jury plaintiff's reasons for leaving Hungary and rebut any negative inference raised by his renunciation of citizenship. If this line of questioning created sympathy for Hagl it was Stern's fault for trying to make plaintiff out to be a Hungarian Philip Nolan [7] and thus create prejudice against him.

Having reviewed the reasons advanced by counsel for a new trial and having found them to be without merit, I conclude that Stern's motion must be denied.

---

6. This information was placed on the record during the liability phase of the case. (N.T. 2–148 to 150) No reference to it or offers concerning it were made during the damages portion of the trial.

7. See Edward Everett Hale, *The Man Without a Country*, Ticknor and Fields, Boston, 1865.