## Richmond

### JOSEPH L. SUMNER, JR.

### v.

### JOYCE B. SMITH

August 30, 1979.

Record No. 771342.

Present: I'Anson, C. J., Carrico, Cochran, Harman, Poff and Compton, JJ.

*Melvin J. Radin (Henry L. Sadler, III; Arthur C. Ermlich & Associates,* on brief), for appellant.

*Richard Y. Atlee (Hall, Fox and Atlee, P. C.,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

■ Joseph L. Sumner, Jr., plaintiff in the trial court, filed his motion for judgment against Joyce B. Smith, defendant, seeking damages for personal injuries alleged to have been sustained by Sumner on March 11, 1975, when a motor vehicle in which he was riding as a passenger was struck from the rear by an automobile operated by Mrs. Smith. At the conclusion of plaintiff's evidence, the trial court, over plaintiff's objection, granted defendant's motion to strike the evidence as insufficient to show that the plaintiff had sustained an injury proximately caused by the accident and entered summary judgment for the defendant. This action of the trial court, challenged by Sumner on appeal, requires us to view the evidence in the light most favorable to the plaintiff.

Sumner was a Helicopter Technical Inspector in the United States Army, stationed at Fort Eustis. On the morning of the accident, he was riding to work in a pickup truck operated by his brother-in-law, Joseph C. Ritchie. While stopped at an intersection, the truck was struck from behind by Mrs. Smith's automobile. Sumner testified that although he had his seat belt fastened, the force of the collision caused his head to strike the back of the cab, caused his body to move forward and his head to come back and hit the cab a second time, and caused a portable radio to fall off the dashboard of the truck. When Sumner examined the vehicles after the collision, he observed that the rear bumper of the truck was bent down approximately one inch, and the grill on the front of Mrs. Smith's car was "pushed in". As no one appeared to be injured, the police were not called to investigate the accident, and Sumner and Ritchie proceeded to Fort Eustis.

Sumner testified that when he went to work that day he had a headache for which he took an aspirin, and that his back "started giving . . . [him] problems" as he was getting into a helicopter. At the suggestion of his superior, he went to the flight surgeon's office, where he was given no treatment but was told to "take it easy" because his

discomfort could have come from a muscle spasm that might disappear. Two days later, Sumner consulted the flight surgeon at McDonald Army Hospital and received massage and heat pack treatment. Sumner said that he had previously been treated at this hospital for problems concerning the upper portion of his back but at this time he had pain "[r]ight at the base of the spine which left over the spine and down the right hip and into the thigh". Prior to the accident of March 11, he had never experienced back trouble of that kind, nor had he ever been in any other motor vehicle accident.

Sumner described his visits to a civilian orthopedic specialist, Dr. David L. Durica, whom he first consulted within a month after the accident. Dr. Durica examined him, prescribed exercises and medication, recommended that he use a board on his bed, and, after several visits, released him. By this time, the pain at the base of his head had disappeared, but he continued to take the medication prescribed by Dr. Durica for his back problem. When Sumner had exhausted his supply of medication, the pain in his back returned; one day, after he had climbed into a helicopter and bent over to inspect an instrument panel, he could not straighten up because of the pain and had to be assisted from the aircraft. He returned to Dr. Durica, who examined him again and recommended that he consult the orthopedic surgeons at McDonald Army Hospital. There, Colonel Barja, an Army orthopedic surgeon, examined Sumner and later gave him an injection in the base of his back, a procedure which required him to be hospitalized for three days. Upon his discharge from the hospital, Sumner returned to his regular duties and has since suffered no pain in his back, head or neck.

During cross-examination of Sumner, counsel for Mrs. Smith introduced into evidence Sumner's Army medical records. These indicated that Sumner had sustained a back injury in a fall in Korea in 1972, and that in November, 1974, he reported that two weeks previously he had suffered an "onset" of right lower back pain while climbing out of a helicopter. Sumner insisted that these pains were not in the same portion of his back as those resulting from the 1975 rear-end collision.

Dr. Durica testified that when he examined Sumner on March 21, 1975, Sumner said that he had experienced previous back problems, had been unable to work for eight weeks until one month prior to his accident, and felt that his old injury was "resolving" but the automobile accident had "started him back . . . with the same symptoms". Sumner complained of pain in the same area where he had experienced low back pain prior to the accident. Dr. Durica diagnosed Sumner's problem as a cervical spine sprain and lumbosacral spine sprain. He

denied, on cross-examination, that his diagnosis was based solely upon the subjective history which Sumner related, although he conceded that he had made no objective findings of muscle spasm or changes in reflexes or motor sensation. Nevertheless, he felt that Sumner's complaints were legitimate. Dr. Durica believed that his examination, as well as the patient's history, was important in enabling him to make the diagnosis. He treated Sumner several times and advised him to consult the orthopedic surgeon at Fort Eustis. After Sumner had been treated at the military hospital, Dr. Durica examined him again, concluded that Sumner had suffered "an exacerbation of his original symptoms" which had been successfully treated by epidural block, and discharged him.

Colonel R. H. Barja first examined Sumner on August 14, 1975, and found restricted range of motion of his spine, indicating pain in the area of the lumbosacral spine. Sumner reported that he had suffered low back pain for three years and that his condition had been aggravated by the rear-end collision. Dr. Barja was of opinion that Sumner's previous back injury would make him more susceptible to further injury to his back. The Army hospital records, according to Dr. Barja, showed that Sumner had been given a physical examination and cleared for flight status, that is, found fit for duty without limitation, on February 1, 1975. Dr. Barja described the treatments given to Sumner, beginning with physical therapy and ending with the procedure in which Sumner was hospitalized for three days and given an injection in the area of his pain. This procedure, Dr. Barja believed, had given complete relief to Sumner.

It is uncontroverted that Sumner's evidence made out a prima facie case of negligence on the part of Mrs. Smith proximately causing the motor vehicle accident. The evidence also showed that there was sufficient impact to dislodge a portable radio and twice to propel Sumner's head backward against the cab of the truck in which he was riding, and that after the accident his head ached and his lower back pained him sufficiently to cause him to seek relief at the flight surgeon's office. There was evidence that Sumner was treated by the flight surgeon two days after the accident, and that ten days after the accident he consulted Dr. Durica and complained that his quiescent preexisting back problems had been aggravated by the accident. Based not only upon the information furnished by Sumner but also upon their independent examinations of the patient, Dr. Durica and Colonel Barja each diagnosed his problems, and Colonel Barja participated in the injection procedure which satisfactorily solved the problems.

■ Sumner insisted that the pain resulting from the motor vehicle

accident was in a different area of his back from his previous back pains. The hospital records and medical evidence indicated otherwise, but it is the jury's function to resolve such conflicts and inconsistencies in the evidence. As the trial court noted in ruling on the motion to strike, although Sumner's testimony connected his injuries with the accident, the testimony of the medical witnesses did not expressly establish the causal connection, and Sumner's own testimony was inconsistent with some of the history which he gave to his doctors. But this is in effect a ruling on the weight of the evidence and the credibility of witnesses, matters that are left to the jury to resolve. *Alvey* v. *Butchkavitz,* 196 Va. 447, 451-52, 84 S.E.2d 535, 538 (1954).

█ While failure or inability to adduce direct medical evidence, generally relied upon to establish causal connection between injury and accident, may significantly increase the plaintiff's risk of nonpersuasion, such evidence is not a prerequisite to recovery. The testimony of the plaintiff alone, taken with all reasonable inferences which could be drawn from his testimony and from the medical evidence in the case, presented a jury issue as to causal connection. *See Gwaltney* v. *Reed,* 196 Va. 505, 509, 84 S.E.2d 501, 503 (1954); *Evans* v. *S. J. Groves & Sons Company,* 315 F.2d 335, 349 (2d Cir. 1963); *Peterson* v. *Underwood,* 258 Md. 9, 16-18, 264 A.2d 851, 855 (1970); *Carr* v. *Martin,* 35 Wash.2d 753, 215 P.2d 411 (1950); Annot., 2 A.L.R.3d 290, 303 (1965).

Accordingly, we hold that the trial court erred in striking the evidence and entering a summary judgment for defendant. The judgment will be reversed and the case remanded for a new trial.

*Reversed and remanded.*