## Richmond

FLORIDA E. PETERSON

V.

JULIET NEME

September 11, 1981.

Record No. 790651.

Present: All the Justices.

478

*Lowry J. Miller (Miller, Miller and Cyron,* on brief), for appellant.

*Ansley J. Robin (Philip F. Hudock and Associates, P.C.,* on brief), for appellee.

POFF, J., delivered the opinion of the Court.

The principal question raised by this appeal is whether a non-immigrant alien, excluded by federal law from the job market in this country, may recover wage losses as an element of damages *ex delicto.*

The plaintiff Juliet Neme, a citizen of Colombia, entered the United States in 1970 under a temporary visitor-for-pleasure visa. *See* 8 U.S.C. § 1101(a)(15)B (1976). A non-immigrant alien in her status is forbidden by federal law to work during her stay here. 8 C.F.R. § 214.1(e) (1981). Although her visa expired August 26, 1971, she remained in the United States and accepted employment as a housekeeper in three Maryland homes. On account of those violations of the immigration laws and regulations, she became subject to deportation, 8 U.S.C. §§ 1251(a)(2) and (9) (1976), but proceedings were never commenced against her.

On January 9, 1976, as Neme attempted to walk across Columbia Pike, she was struck by an automobile driven by the defendant Florida E. Peterson. Neme filed a motion for judgment against Peterson, claiming damages "for personal injuries and attendant

damages sustained as a result of the defendant's negligence." According to the plaintiff's testimony and a written summary she offered as Exhibit 4, her injuries had caused her to miss 230 days from work and to lose $5,209.40 in wages. Over the defendant's objection, the trial judge admitted the exhibit and other evidence in support of the plaintiff's claim for wages lost prior to trial. He ruled that evidence of the plaintiff's immigration violations was irrelevant to that claim but that, since the plaintiff remained subject to possible deportation, such evidence would be admissible if she elected to claim damages for future wage losses. The plaintiff asserted no such claim, evidence of her immigration status was excluded, and the defendant was not permitted to cross-examine the plaintiff on the subject.

The jury was instructed that it could consider as an element of damages "[a]ny loss of earnings in the past by reason of being unable to work at her calling." The jury returned a verdict for the plaintiff and assessed damages at $18,000.

In her first assignment of error, the defendant challenges the quoted portion of the instruction. The parties agree that Neme was an alien residing unlawfully in this country; that her acceptance of employment was a violation of federal immigration laws and regulations; and that the federal penalty for such a violation, deportation, is civil rather than criminal. The question in dispute is whether an illegal alien guilty of such a violation can recover, as an element of damages in tort, wages lost before trial.[1]

■ At the threshold, we consider what standing an alien has to sue in American courts. "It has long been settled . . . that the term 'person' . . . encompasses lawfully admitted resident aliens as well as citizens of the United States and entitles both citizens and aliens to the equal protection of the laws of the State in which they reside." *Graham* v. *Richardson,* 403 U.S. 365, 371 (1971). *See also Yick Wo* v. *Hopkins,* 118 U.S. 356 (1886) (invoking the Fourteenth Amendment to strike down administration of a facially lawful licensing ordinance which was being applied to discriminate against lawfully resident Chinese). The equal protection clause extends to lawfully resident aliens who "work for a living in the common occupations of the community," *Truax* v. *Raich,* 239 U.S. 33, 41 (1915), and a state which excludes such aliens from

---

1 Because it is not in issue, we do not decide that question as applied to future wage loss claims. *See Hagl* v. *Jacob Stern & Sons, Inc.,* 396 F. Supp. 779 (E.D.Pa. 1975).

employment in its classified service violates their rights to equal protection, *Sugarman* v. *Dougall,* 413 U.S. 634 (1973).

■ Although the Supreme Court has never had occasion to decide whether aliens *unlawfully* resident in the United States have standing to sue, lower federal courts and courts in sister states have decided the question in the affirmative. *See, e.g., Hagl* v. *Jacob Stern & Sons, Inc.,* 396 F. Supp. 779 (E.D.Pa. 1975); *Martinez* v. *Fox Valley Bus Lines,* 17 F. Supp. 576 (N.D.Ill. 1936); *Janusis* v. *Long,* 284 Mass. 403, 188 N.E. 228 (1933); *Montoya* v. *Gateway Insurance Co.,* 168 N.J.Super. 100, 401 A.2d 1102 (1979); *Torres* v. *Sierra,* 89 N.M. 441, 553 P.2d 721 (1976); *Catalanotto* v. *Palazzolo,* 46 Misc.2d 381, 259 N.Y.S.2d 473 (1965); *Commercial Standard Fire & Marine Co.* v. *Galindo,* 484 S.W.2d 635 (Tex. Civ. App. 1972); *Arteaga* v. *Literski,* 83 Wis.2d 128, 265 N.W.2d 148 (1978). We have been unable to find any decision in the negative except the one cited by the defendant, *Coules* v. *Pharris,* 212 Wis. 558, 250 N.W. 404 (1933), and that case was expressly overruled in *Arteaga* v. *Literski, supra.* Accordingly, we hold that Neme had standing to sue in Virginia's courts.

Conceding the standing question, Peterson argues that "the law in Virginia does not allow a plaintiff to come to court and prove a violation of law or public policy for the purpose of enriching the pocket of the violator." Citing several decisions of this Court, Peterson says that unlawful contracts are unenforceable, and, since the employment contracts underlying Neme's tort claim for wage losses are unlawful, her tort claim is unenforceable.

■ We have held that a plaintiff cannot recover damages *ex contractu* when he is guilty of a criminal offense relative to the contract under which he claims, *Bowen Elec. Co.* v. *Foley,* 194 Va. 92, 72 S.E.2d 388 (1952); *Massie* v. *Dudley,* 173 Va. 42, 3 S.E.2d 176 (1939); *Eagle, etc., Ins. Co.* v. *Heller,* 149 Va. 82, 140 S.E. 314 (1927), or when the General Assembly has declared that contract void, *Kennedy* v. *Annandale Club,* 221 Va. 504, 272 S.E.2d 38 (1980). Although Congress, in the exercise of its plenary power to regulate the rights and obligations of resident aliens, might have criminalized an illegal alien's acceptance of employment, or declared any employment contract into which he entered unenforceable, or required forfeiture of any wages collected under such a contract, Congress did none of these. Hence, the rule in the cases the defendant cites is not germane to the argument she advances.

Alternatively, Peterson contends that federal regulation of the employment of illegal aliens is a matter of high national public policy designed "to protect American labor from unwarranted competition" and that the damage instruction violates that policy.

■ We recognize that the influx of illegal aliens into the American labor market is a matter of growing national concern. While experience indicates that the jobs they fill are usually seasonal and those spurned by other workers, their employment in times (or areas) of high unemployment deprives citizens and work-eligible aliens of job opportunities. And, when illegal aliens agree to work under substandard conditions for substandard wages, they compete unfairly with workers lawfully employed. We agree with Peterson that the job restriction written into the immigration laws and regulations was designed to serve an important public policy goal. We further agree that Code § 40.1-11.1, which imposes a criminal penalty upon those who knowingly employ or assist in the employment of illegal aliens, evinces the intent of our legislature to support the national policy. But we do not agree that the damage instruction given below violates that policy.

Arguably, illegal aliens would be discouraged from seeking employment in the United States if they were forewarned that American courts would refuse to enforce their employment contracts. *Contra, Gates* v. *Rivers Construction Co.*, 515 P.2d 1020 (Alaska 1973). However, Neme's claim for wage losses sounds not in contract but in tort. Ordinarily, a person seeks a job because he needs to earn a living, not because he wants to become legally eligible to recover wage losses occasioned by tortious injury. We fail to see how allowing Neme's claim for wages lost on account of Peterson's tort would encourage other illegal aliens to seek employment in this country.

■ Finding no merit in the defendant's first assignment of error, we turn to the second issue she raises. Peterson submits that evidence of Neme's immigration status, even if otherwise irrelevant, was competent to rebut the plaintiff's claim that her wage losses resulted from her injuries. "[T]he real reason for the plaintiff not working," the defendant says, "was because of the plaintiff's status as an illegal alien in the United States."

The trial judge ruled, and we support his decision, that the evidence was inadmissible because it was irrelevant and immaterial to Neme's right to recover damages for lost wages. Even if the excluded evidence was competent for the purpose Peterson sug-

gests, we question its rebuttal value; if Neme's status did not deter her from working before she was injured, it is improbable it did so later.

Obviously, the proffered evidence was also uniquely prejudicial. We believe the trial judge properly could conclude that the prejudicial impact of the proffered evidence outweighed its probative value, and we sustain his rulings.

In her final assignment of error, Peterson charges that "[t]he trial court erred in admitting into evidence plaintiff's Exhibit No. 4 (Summary of Alleged Loss of Time From Employment Claimed by Plaintiff)." As phrased by Peterson, the question presented by this assignment of error is: "Is the plaintiff's opinion that she was unable to work at her employment as a direct result of injuries sustained in an auto accident admissible without the testimony of a physician or other medical expert?"

■ It is implicit in our holding in *Sumner v. Smith,* 220 Va. 222, 257 S.E.2d 825 (1979), that lay testimony of causal connection between an automobile accident and injury is admissible for whatever weight the fact finder may choose to give it, even when medical testimony fails to establish causal connection expressly. Here, there was express, unequivocal medical testimony that the injuries caused by the accident included a "herniated disc," "sciatic nerve irritation," and "chronic, long lasting muscle ligamentus strain to the spine"; that these injuries caused "a reduction of approximately 25% in the normal range of motion in bending forward or backward or to the side"; that physical therapy, ultrasound massage, medication, and a lumbar brace were prescribed; that the symptoms and disability did not respond to treatment; that Neme was advised to discontinue domestic labor; and that the disability and pain resulting from her injuries were such that she would have been unable to engage in her employment from time to time.

As stated by the defendant, the only question presented by this assignment of error is whether the plaintiff's lay opinion and the supporting exhibit were *admissible* to prove causal connection between her injuries and her capacity to work. Guided by our decision in *Sumner,* we hold that the lay evidence was properly admitted and, considered together with the medical testimony, was

sufficient to prove causal connection between Neme's injuries and her wage losses.[2]

Finding no error below, we will affirm the judgment.

*Affirmed.*

---

2 In argument on brief, the defendant challenges the sufficiency of the evidence, both lay and medical, to prove causation as to each of the 230 days the plaintiff missed work. Even if this issue is fairly within the scope of the assignment of error, we observe that there is nothing in the law which requires a plaintiff claiming damages for the loss of earning capacity to prove incapacity by daily medical examinations.