Present: Carrico, C.J., Compton, Stephenson, Lacy, Hassell,
Koontz, JJ., and Whiting, Senior Justice

NORFOLK AND WESTERN RAILWAY COMPANY

OPINION BY
v. Record No. 950210       SENIOR JUSTICE HENRY H. WHITING
                                   November 3, 1995
ROBERT E. PURYEAR

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Clifford R. Weckstein, Judge

In this appeal, we are asked to decide whether a litigant's written summary of those parts of the testimony favorable to his case is admissible into evidence as an exhibit. We are also asked to determine whether the trial court improperly ruled that a proper foundation was laid for the admission of certain tests relied upon by an expert witness.

Robert E. Puryear worked for the Norfolk and Western Railway Company (N & W) for 32 years, first as a fireman and an engineer, and then, starting in 1975, as a foreman. While he was a fireman and an engineer, Puryear rode on N & W's locomotives every working day, and while a foreman, he rode on N & W's locomotives three days a week. Less than a year before his retirement from N & W in September 1987, Puryear was advised that he suffered from hearing loss.

Two years after retiring, Puryear filed this damage action against N & W under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 et seq. In this action, Puryear alleged that N & W violated a duty of care imposed upon it by FELA in exposing him to excessive noise from its locomotives, equipment, and horns, thereby causing his hearing loss. During a jury trial, the trial court admitted certain exhibits and expert testimony over N & W's

objection.  The jury returned a verdict of $150,000 in favor of Puryear upon which final judgment was entered.  N & W appeals, assigning, among other things, the admission of this evidence as error.

Puryear testified that, between 1961 and 1975, he spent 50% of his working time riding on General Motors EMD GP-9 locomotives; another 10% of his working time during this period was spent on locomotives he described as "Alcos."  From 1972 to 1975, Puryear also made approximately 60 trips on General Motors EMD-F-7 locomotives.  While a foreman, Puryear also rode on General Electric Company C-36-7 locomotives at least one day out of the three days each week that he rode on N & W locomotives. Puryear testified about the loud noise created by the engines and equipment on the GP-9, F-7 and Alco locomotives and the horns of the C-36-7 locomotives.

Dr. Angelo Campanella, one of Puryear's expert witnesses on the measurement of sound, testified about the noise levels on N & W's F-7, GP-9, and C-36-7 locomotives.  According to Dr. Campanella, tests which he and other experts had performed indicated that the horn on the C-36-7 locomotive and the engines and equipment of the F-7 and GP-9 locomotives produced noise in excess of sound levels fixed by Federal Railroad Administration (FRA) regulations at the time FELA employees were exposed to such noise.[*]

_____

[*]The court ruled that the FRA noise standards fixed N & W's

-2-

Except for Puryear's testimony that the Alco locomotives made more noise than the F-7 locomotives, there was no evidence that any of the other types of locomotives and equipment on which Puryear rode during the balance of his employment exceeded FRA noise standards. In fact, Campanella testified that an SD-40 locomotive of the same model on which Puryear rode 40% of the time from 1961 to 1975 had been tested and found not to exceed those standards.

Puryear and his experts on the cause and effect of hearing loss testified that his hearing loss developed during his employment with N & W. However, N & W's expert in the same field, who examined Puryear after this controversy arose and had also reviewed hearing tests performed upon Puryear in 1987, 1989, and 1994, opined that Puryear's significant hearing loss occurred after he retired, due to an aging phenomenon known as presbycusis. Thus, the evidence conflicted on the issues of the amount of Puryear's exposure to the allegedly excessive noise of some of N & W's locomotives and equipment and whether that exposure caused his hearing loss.

Against this background, we consider whether the trial court erred in admitting into evidence two exhibits relevant to these conflicts. The first exhibit was Puryear's written summary of
(..continued)
duty of care and no error has been assigned to that ruling. Therefore, it became the law of the case.

his testimony on the amount of time he spent on locomotives that he and Dr. Campanella regarded as excessively noisy. The second exhibit was a chart prepared by Dr. Campanella, based on the information in Puryear's summary. This chart summarized Dr. Campanella's testimony on his calculations of Puryear's periods of exposure to the excessive noise of these locomotives.

N & W contends that these exhibits should not have been admitted into evidence because they summarized only those parts of Puryear's oral testimony favorable to his contentions and because, during its deliberations, the jury might have placed more weight on these written summaries than on their collective recollection of the actual testimony. Puryear responds by claiming that "[t]his Court has routinely approved the admission of summary exhibits into evidence."

None of the cases relied upon by Puryear deals with the issue of the admissibility of summaries or charts of favorable parts of oral testimony upon a contested issue. In Peterson v. Neme, 222 Va. 477, 281 S.E.2d 869 (1981), we specifically stated that "the only question presented by this assignment of error is whether the plaintiff's lay opinion [of her injuries and disabilities] and the supporting exhibit [summarizing part of the plaintiff's oral testimony] were admissible to prove causal connection between her injuries and her capacity to work." Id. at 483, 281 S.E.2d at 872. Thus, we were not deciding whether the plaintiff's summary of her testimony was admissible as an

-4-

exhibit.  In <u>Marefield Meadows, Inc. v. Lorenz</u>, 245 Va. 255, 264, 427 S.E.2d 363, 368 (1993), and <u>Avocet Development Corp. v. McLean Bank</u>, 234 Va. 658, 667, 364 S.E.2d 757, 762 (1988), we approved the introduction of exhibits that summarized voluminous <u>documentary</u> evidence that was not in dispute.

And, contrary to Puryear's reading of <u>Scott v. Greater Richmond Transit Co.</u>, 241 Va. 300, 305, 402 S.E.2d 214, 218 (1991), and <u>Horne v. Milgrim</u>, 226 Va. 133, 138, 306 S.E.2d 893, 895 (1983), we indicated in those cases that written exhibits repeating oral testimony given at trial, either by a witness or by the reading of depositions, should not be introduced into evidence as exhibits because of the danger that the summarized oral testimony may receive more emphasis than other oral testimony.  Indeed, we further indicated in <u>Scott</u> that the reason a written version of the oral testimony in that case should not be made an exhibit was because a jury can take exhibits into the jury room pursuant to Code § 8.01-381.  241 Va. at 305, 402 S.E.2d at 218.

Puryear claims that these exhibits were not argumentive, but were merely illustrative aids.  However, his counsel's argument belies this claim.  His counsel argued that Puryear had no duty to make N & W's case for it and agreed that if Puryear could introduce these written summaries into evidence as exhibits, N & W could likewise introduce an exhibit emphasizing the periods of time that Puryear rode on locomotives which did not exceed the

-5-

FRA noise standards. Thus, if we adopted Puryear's contention, jury trials could become a battle of charts and summaries of oral testimony, shifting the jury's attention away from traditional considerations of each witness's credibility and the jury's obligation to decide the case based upon its collective recollection of all the evidence.

Although these summaries of Puryear's oral testimony might have been used as aids in the presentation of his case, we conclude that they were clearly inadmissible into evidence as exhibits. This is because, when admitted into evidence and taken into the jury room, the summaries of this testimony could have been reviewed during the jury deliberations and thus would have impermissibly emphasized Puryear's version of the facts to the prejudice of N & W.

And, contrary to Puryear's contention, the admissibility of such summaries is not subject to the discretion of the trial court. A "trial court has no discretion to admit clearly inadmissible evidence because 'admissibility of evidence depends not upon the discretion of the court but upon sound legal principles.'" Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986)(quoting Crowson v. Swan, 164 Va. 82, 92, 178 S.E. 898, 903 (1935)). Thus, we hold that the trial court erred in admitting the written summaries into evidence.

Because of the error in admitting the written summaries of testimony, we will reverse the trial court's judgment and remand

the case for a new trial.  Since the evidence may not be the same at the new trial, we will not decide whether a proper foundation was laid for the admission of some of the tests relied upon by Dr. Campanella in forming his opinion of the excessive noise levels to which Puryear was exposed.

Reversed and remanded.

JUSTICE KOONTZ, dissenting.

I concur with the majority's decision that the written summaries of those parts of the testimony favorable to Puryear's case were erroneously admitted into evidence as exhibits. Specifically, I agree that the adoption of the practice of admitting summaries of oral testimony would result in a battle of charts and summaries of oral testimony, shifting the jury's attention away from traditional considerations of each witness's credibility and the jury's obligation to decide a case based upon its collective recollection of all the evidence.  In my view, however, the error in this case was harmless.  See Code § 8.01-678.

N & W contends that "the admission of [Puryear's] exhibits, and their use in the jury room, prejudiced [N & W] and unfairly elevated the credibility and persuasiveness of oral testimony offered by [Puryear's] witnesses."  The sole question of fact relevant to this evidence was whether Puryear's hearing loss and tinnitus were attributable to his exposure to excessive noise on his job at N & W.  While the exhibits erroneously admitted may

have emphasized the evidence showing this to be the case, the record as a whole nonetheless supports the jury's verdict attributing Puryear's hearing loss and tinnitus to conditions of his employment.  Accordingly, I do not see that N & W was prejudiced by the erroneous admission of the exhibits and would hold that error to be harmless, substantial justice for the parties having been achieved.

Furthermore, because I find no error in the second issue raised by N & W, I would affirm the jury's verdict and award. Accordingly, I respectfully dissent.