COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Causey and Callins
Argued at Winchester, Virginia


NOOR A. POPAL

MEMORANDUM OPINION[*] BY
v.      Record No. 0706-23-4          JUDGE DOMINIQUE A. CALLINS
                                      JULY 2, 2024
SANJAY GARG


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Douglas L. Fleming, Jr., Judge

Khadeja Tipu (Stephen M. Terpak; Sutter & Terpak, PLLC, on
briefs), for appellant.

William W. Miller (John D. McGavin; McGavin, Boyce, Bardot,
Thorsen & Katz, PC, on brief), for appellee.


Noor A. Popal appeals the jury's award of $4,545 in his personal injury lawsuit against

Sanjay Garg. He argues that the trial court abused its discretion in admitting certain evidence, in

instructing the jury, by demonstrating improper bias, and in denying his motion to set aside the

verdict and for a new trial. Finding no error, we affirm the judgment of the trial court.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

On June 10, 2017, Garg rear-ended Popal in a vehicle collision in Loudoun County.[2] Popal was 18 years old at the time of the collision. Emergency personnel examined Popal at the collision scene, and he did not seek any additional medical treatment that day. At trial, Popal testified that after the collision, he had on-going, daily neck pain that he did not experience before the collision.

Approximately three days after the collision, Popal sought additional medical treatment, and a doctor recommended over-the-counter pain medication; he did not return for any follow-up medical treatment for his neck until September 27, 2017.[3] At a follow-up appointment, Popal was referred to physical therapy due to complaints of neck pain. He also sought treatment with a spine specialist who referred him for a magnetic resonance imaging ("MRI") scan. Popal attended two additional physical therapy appointments, discontinued therapy for over six months, then returned for four more appointments. In April of 2019, Popal received trigger point injections to his neck.

At trial, Popal testified that he planned to use the jury's award to participate in further treatment options, including surgery. The following exchange ensued between Popal and his attorney, Stephen Terpak:

> [Terpak:]    So we've been discussing this injury.
>
> [Popal:]    Yes.
>
> [Terpak:]    Where did this come from?

---

[1] "[W]e view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." *Sangaran v. Sachdeva*, 72 Va. App. 218, 220 (2020) (alteration in original) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)); *see also Downer v. CSX Transp., Inc.*, 256 Va. 590, 595 (1998) ("we view the evidence of damages in the light most favorable to the validity of the verdict").

[2] Garg conceded liability for the collision before trial; the only issue before the jury was the award of damages, if any.

[3] During the three-month period in which Popal did not receive medical treatment for his neck pain, he sought medical treatment for an unrelated eye injury.

- 2 -

[Popal:] This came from my accident.

[Terpak:] Ok, and that was --

Garg's trial attorney then interjected, "I'm going to object, Your Honor. He's rendering an opinion on causation. He's a fact witness." The trial court sustained Garg's objection, ruling that Popal "can testify to what happened to him" and "how he felt after it happened," but that there was "no foundation laid" for Popal to address causation and that such a response "intruded into the medical realm." Later in his direct examination, Popal admitted to continuing his sports and gym activities after the collision, including swimming, weightlifting, and playing basketball.

During cross-examination, Popal objected on hearsay grounds to a line of questioning regarding the total billed medical expenses related to his neck injury. The trial court overruled Popal's objection, ruling that Popal's medical expenses were admissible as an element of his special damages and that the amount was not unduly prejudicial. Popal then admitted the cost of his neck pain treatment totaled $4,545.

Popal called Dr. Michael Hasz, an orthopedic surgeon, as a medical expert. Dr. Hasz testified that Popal sustained an injury to the ligaments and tendons in the back of his neck; the doctor based his diagnosis on Popal's statements regarding his symptoms, his medical records, and a physical examination that took place on September 3, 2020. Dr. Hasz also testified that the collision caused Popal's injury. He testified that Popal's best remaining treatment option was surgery, estimated to cost between $20,000 and $60,000.[4]

Garg called Dr. Ali Moshirfar, an orthopedic surgeon, as a medical expert. Dr. Moshirfar testified that after reviewing all the prior medical records, including Dr. Hasz's report, he concluded

---

[4] Dr. Hasz testified that one of two surgeries would alleviate Popal's pain: platelet therapy costing between $2,500 to $4,000 or stem-cell therapy costing between $4,000 to $8,000. Dr. Hasz concluded that, although variable, Popal's treatment would cost between $20,000 and $60,000 "for all the charges."

that Popal had suffered a soft tissue sprain and strain resulting from the car collision.  He testified that such an injury should resolve in less than eight weeks with proper physical therapy and follow-up treatment.  Dr. Moshirfar further concluded that Popal's proposed treatment was disproportionate, unreasonable, and that he required no further treatment.

On four occasions, the trial court sustained objections to Dr. Moshirfar's testimony about Popal's MRI results.  The trial court limited Dr. Moshirfar's testimony to his conclusions based on his review of Popal's records.  The trial court twice explicitly instructed the jury to disregard Dr. Moshirfar's statements regarding the MRI results.  In its second instruction to disregard, the court explained to the jury that Dr. Moshirfar's MRI testimony was not admissible and cautioned the jury against holding such error against the witness.  Upon the trial court's request, the jury confirmed that it could disregard that testimony.  During instructions, one juror sought permission to ask a question "about the evidence that was submitted," but the trial court noted that it was "highly unusual during a trial that a juror would ask a question" and that questions are "typically done when the jury retires to deliberate."

At the close of the evidence, Popal objected to a jury instruction which stated that the plaintiff has a duty to mitigate his damages, arguing that the evidence was insufficient to support a jury finding that he failed to mitigate; the trial court overruled his objection.  Later, during deliberations, the jury submitted two questions to the trial court.  The first asked whether the MRI record was admissible because the results were not part of the documents provided.  The second asked what type and how many trigger point injections Popal received.  In response, the trial court instructed the jury that they must base their verdict on the evidence received, both documents and witness testimony, in accordance with the instructions of the court.  The jury ultimately returned a verdict awarding Popal $4,545.

Popal filed a post-trial motion to set aside the verdict, reasserting his objections to the trial court's rulings on Popal's injury causation testimony, prior medical bills testimony, and the mitigation instruction. Additionally, Popal asserted that, notwithstanding the trial court's limiting instructions regarding the MRI results, the jury question showed that Dr. Moshirfar's testimony "remained on the minds of the jury and influenced their verdict." The trial court denied Popal's motion and entered final judgment. Popal appeals.

## ANALYSIS

### I. The Scope of Cross-Examination

Popal argues that the trial court erred by permitting Garg to cross-examine Popal about the amount of his past medical bills because such testimony was outside the scope of direct examination. At trial, Popal only objected on hearsay grounds.[5] Popal contended that, "[Garg is] attempting to put in [Popal's] total amount of medical expenses. It's hearsay." He repeated this objection three more times. Popal failed to raise any claim that the cross-examination about his past medical bills exceeded the permissible limits of cross-examination. Accordingly, we will not consider this argument for the first time on appeal.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of Rule 5A:18 is 'to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals.'" *Friedman v. Smith*, 68 Va. App. 529, 544 (2018) (quoting *Andrews v. Commonwealth*, 37 Va. App. 479, 493 (2002)).

---

[5] Although, at trial, Garg contended that, "the billing is admissible. It's relevant[,]" the record does not reveal that Popal raised the issue of the permissible scope of direct examination.

To preserve an objection for appeal, "[n]ot just any objection will do. It must be both *specific* and *timely* — so that the trial judge would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). "If a party fails to timely and specifically object, he waives his argument on appeal." *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022). We "will not apply the exceptions [to Rule 5A:18] *sua sponte*." *Id.* at 756.

## II. The Jury's Damages Award

Popal argues that, under *Bowers v. Sprouse*, 254 Va. 428 (1997), the jury's award of $4,545 was insufficient as a matter of law because it matched the exact amount of his past medical treatment.[6] Garg contends that because the jury's verdict corresponds only to a portion of Popal's claimed special damages, the *Bowers* rule does not apply. Further, Garg argues that "even if the amount of the verdict corresponds to an identifiable portion of the special damages, that evidence is controverted so the jury's verdict is not inadequate as a matter of law."

This Court "reviews questions of law de novo, including those situations where there is a mixed question of law and fact." *Taylor v. Northam*, 300 Va. 230, 250-51 (2021) (quoting *Napper v. ABM Janitorial Servs.-Mid Atl., Inc.*, 284 Va. 55, 61 (2012)). A jury's verdict is inadequate as a matter of law when the damages amount is "for the *exact* amount of the plaintiff's medical expenses and other special damages . . . , irrespective of whether those damages were controverted." *Bowers*, 254 Va. at 431 (emphasis added). This has been referred to as the *Bowers* rule. But the Virginia Supreme Court has cautioned that

> [t]his bright line rule is limited, however, to those factual situations
> in which the jury verdict is identical to the *full* amount of the
> special damages. The rationale underlying the rule does not extend
> to an award which deviates from the amount of all the special

---

[6] Popal also argues that the evidence of his past medical bills was uncontroverted, because "the record clearly reflect[s] that only Mr. Popal's accident-related treatment totaled to $4,545.00."

- 6 -

damages claimed, *even if the amount of the verdict corresponds to an identifiable portion of the special damages*. In such case, the bright line rule of *Bowers* cannot be applied.

*Walker v. Mason*, 257 Va. 65, 68 (1999) (emphases added). For example, in *Hundley v. Osborne*, 256 Va. 173 (1998), our Supreme Court determined that the *Bowers* rule was inapplicable because the jury's verdict was not for the exact amount of the plaintiff's claimed special damages, but rather only identified a portion of the claimed special damages. *Id.* at 177-78 n.9 (reversing the trial court's grant of a motion to set aside the jury verdict where the Court could not "say that Osborne's evidence of future medical expenses and loss of wages" was uncontroverted).

Here, the *Bowers* rule does not apply because the jury's verdict of $4,545 is not the full amount of Popal's claimed special damages. Popal not only requested compensation for his past suffering and inconvenience, but also for his future medical costs and suffering. Dr. Hasz claimed that the necessary surgery for Popal would cost between $20,000 and $60,000. In Popal's testimony and closing argument, he sought $30,000 to $60,000 for the surgery alone. An award for Popal's full claimed special damages would necessarily fall between an estimated $35,000 and $65,000, inclusive of Popal's claimed $4,545 past medical costs and future surgery. The jury's award was therefore not based on Popal's full amount of special damages but was instead only "an identifiable portion of the special damages." *Walker*, 257 Va. at 68. Thus, even though the award matched Popal's claimed medical treatment up to trial, the *Bowers* rule does not apply, and we cannot say that the jury's verdict is inadequate as a matter of law.

Additionally, when "the plaintiff's evidence of special damages is controverted, doubtful as to nature and extent, or subject to substantial question whether attributable to the defendant's wrong or to some other cause," then "the verdict cannot be disturbed on a claim of inadequacy." *Bradner v. Mitchell*, 234 Va. 483, 487-88 (1987). Because the *Bowers* rule does not apply, we

- 7 -

need not address whether the evidence is controverted and hold that the jury's verdict of $4,545 is not inadequate as a matter of law.

### III. Popal's Injury Causation Testimony

Popal argues that the trial court erroneously sustained Garg's objection to Popal's testimony on the cause of his neck injury. Popal contends that, in responding to the question "where did this come from," he was "providing general causal testimony and not any 'technical medical' testimony."[7] Popal's arguments are unavailing.

"Appellate courts review a circuit court's ruling on the admissibility of evidence under an abuse of discretion standard." *Davenport v. Util. Trailer Mfg. Co.*, 74 Va. App. 181, 206 (2022). Generally, "lay testimony of causal connection between an automobile accident and injury is admissible for whatever weight the fact finder may choose to give it." *Todt v. Shaw*, 223 Va. 123, 127 (1982) (quoting *Peterson v. Neme*, 222 Va. 477, 483 (1981)). But this is not to say that a lay person may testify about injury causation that enters the medical realm. "An opinion concerning the causation of a particular physical human injury is a component of a diagnosis, which is part of the practice of medicine." *John v. Im*, 263 Va. 315, 321 (2002). Only qualified expert witnesses may testify to such an opinion. *See id.* ("[S]ince [the witness] was not a medical doctor, he was not qualified to state an expert medical opinion regarding the cause of [plaintiff's] injury."). Applying this established rule, the trial court did not err in refusing to permit Popal to testify that the car collision caused his injury.

---

[7] The trial court sustained Garg's objection, in part, because "in the context of the trial" Popal's testimony "corroborat[ed] Dr. Hasz's entire testimony." Popal argues that in doing so, the trial court "los[t] focus of the context of Mr. Popal's testimony." We disagree. Our review of the record indicates that the trial court properly considered expert testimony, such as Dr. Hasz's testimony, and the context of Popal's testimony when electing to exclude Popal's statement, "[t]his came from my accident."

Popal's reliance on *Sumner v. Smith*, 220 Va. 222 (1979), is misplaced. *Sumner* held that direct medical evidence of a "causal connection between injury and accident[] . . . is not a prerequisite to recovery" in an action for personal injury. *Id.* at 226. A plaintiff's testimony of his physical condition before and after an incident permits a fact-finder to make a causal inference, even in the absence of expert medical testimony. *See id.* at 225-26. Popal was not required to introduce expert medical testimony to recover. This is not to say, however, that Popal was permitted to testify about the cause of his injury. Popal himself was not qualified to attribute his neck injury directly to the collision, and therefore, the trial court did not abuse its discretion in limiting Popal's testimony about the cause of his injury.[8]

## IV. The Jury Instruction to Disregard the MRI References

Popal alleges that the trial court erred in refusing to grant him a new trial based upon what he alleges as the jury's apparent inability to follow the trial court's instructions to disregard Dr. Moshirfar's "repeated references to the MRI." Popal contends that the jury's question about whether the MRI was part of the evidence demonstrates the jury's disregard of the court's instructions. Garg counters that the jury question showed only that the jury sought "clarification regarding the evidence of Popal's past medical treatment." We agree with Garg.

When a trial court instructs a jury to disregard inadmissible testimony, a party is not entitled to a new trial unless there is "'manifest probability of prejudice'" and "the prejudicial effect of an improper remark or question is overwhelming and cannot be cured by a cautionary instruction." *Gross v. Stuart*, 297 Va. 769, 774-75 (2019) (quoting *Lowe v. Cunningham*, 268 Va. 268, 272 (2004)); *see also Landeck v. Commonwealth*, 59 Va. App. 744, 755 (2012). "[A]

---

[8] We decline to accept Popal's argument that because "neither Mr. Popal nor his counsel referred to any medical terms used by Dr. Hasz," Popal's testimony did not enter the medical realm and did not threaten to corroborate Dr. Hasz's medical testimony. Popal cites no authority for the proposition that causation testimony requires medical *terms*.

jury is presumed to have followed a timely and explicit cautionary instruction directing it to disregard an improper remark or question[.]" *Gross*, 297 Va. at 774 (quoting *Lowe*, 268 Va. at 272); *see also Riner v. Commonwealth*, 268 Va. 296, 317 (2004) ("Unless the record shows otherwise, . . . we presume that a jury follows an explicit cautionary instruction given by the trial court."). "[W]hether the conduct was prejudicial is basically a question of fact to be determined in light of all the circumstances in each particular case." *Landeck*, 59 Va. App. at 755 (quoting *Saunders v. Commonwealth*, 218 Va. 294, 303 (1977)). We review the trial court's decision not to grant a new trial for abuse of discretion. *See Carter v. Commonwealth*, 10 Va. App. 507, 514 (1990) ("Whether a new trial will be granted is a matter committed to the sound discretion of the trial court and its decision will not be reversed except for an abuse of discretion.").

In his opening argument to the jury, Popal acknowledged the existence of the MRI, but argued that the diagnostics are not "necessarily conclusive." On direct examination, Dr. Hasz acknowledged that the MRI existed and did not show "any specific findings." Dr. Hasz explained in his testimony why the jury should attribute little weight to that fact. During cross-examination, Dr. Hasz mentioned the MRI several more times and stated that the diagnostics did not show any inflammation.

The trial court ruled that although the experts could identify the records on which they relied to reach their conclusions, they could not opine as to what those diagnostics showed. When Dr. Moshirfar made statements about the MRI that contravened that ruling, the trial court sustained Popal's objections, twice instructing the jury to disregard the comments, and asked the jury to affirm that it could disregard the inadmissible testimony. The jury affirmed that it *could* disregard the inadmissible testimony.

The jury's inquiry about the MRI during deliberations demonstrated the possible confusion about whether the result of the MRI was a part of the evidence. Such confusion would be

- 10 -

understandable given the competing expert opinions on the value of the MRI. But the record contains no indication that the jury *failed* to follow the trial court's instructions to disregard Dr. Moshirfar's improper testimony of the MRI. Popal did not establish any "manifest probability" of prejudice resulting from Dr. Moshirfar's comments, *Gross*, 297 Va. at 774 (quoting *Lowe*, 268 Va. at 272), and trial court therefore did not abuse its discretion in denying his motion to set aside the verdict.

## V. The Mitigation Jury Instruction

Popal claims that the trial court erred in granting the instruction on mitigation of damages over his objection. Relying on *Monahan v. Obici Med. Mgmt. Servs., Inc.*, 271 Va. 621 (2006), he argues that Garg "failed to provide any evidence that Plaintiff Popal refused any recommended treatment or worsened his injuries." Because he did not act contrary to express medical orders, Popal contends that the trial court erred in granting the mitigation instruction and that the error is grounds for a new trial. We disagree.

"A trial court's decision whether to grant or refuse a proposed jury instruction is generally subject to appellate review for abuse of discretion." *Rodrigue v. Butts-Franklin*, 79 Va. App. 645, 653 (2024) (quoting *Howsare v. Commonwealth*, 293 Va. 439, 443 (2017)). "Our 'sole responsibility' in reviewing a challenge to jury instructions 'is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Taylor v. Commonwealth*, 77 Va. App. 149, 166 (2023) (quoting *Molina v. Commonwealth*, 272 Va. 666, 671 (2006)). "[A] litigant is entitled to jury instructions supporting his or her theory of the case if sufficient evidence is introduced to support that theory," and the evidence is sufficient if it "amount[s] to more than a scintilla." *Rodrigue*, 79 Va. at 653 (second alteration in original) (quoting *Hancock-Underwood v. Knight*, 277 Va. 127, 130-31 (2009)).

The mitigation instruction sufficiently supported the evidence. Dr. Moshirfar's testimony established that a proper medical follow-up, including diligent physical therapy, would have resolved Popal's neck pain within eight weeks of the accident. The evidence at trial established that Popal attended a medical appointment within several days after the collision, but sought no further treatment for more than three months. When Popal restarted physical therapy, he attended only two appointments and did not return for over six months. After Popal's six-month hiatus, and notwithstanding his claim of daily neck pain during this time, he attended four more treatment appointments. Dr. Moshirfar testified that such a regiment was not effective physical therapy treatment. As the trial court noted, the jury was free to weigh Dr. Moshirfar's testimony and could conclude that Popal failed to effectuate a proper treatment modality after the collision.

Popal misconstrues the holding of *Monahan*. In *Monahan*, a healthcare provider expressly told the plaintiff that he could either go to the emergency room or rest at home and return if his condition worsened. 271 Va. at 635. Following the healthcare provider's instructions, the plaintiff returned home, and he later suffered a stroke. *Id.* at 628, 635. The Virginia Supreme Court held that the record was insufficient to sustain the mitigation of damages instruction "because it d[id] not reflect any act of neglect by [the patient] following [the healthcare provider's] treatment." *Id.* at 636-37. The Court in *Monahan* did not, however, hold that evidence of a plaintiff disobeying a direct healthcare provider's order was the *only* way to support a mitigation instruction. Here, the evidence sufficiently supported the mitigation instruction, regardless of Popal's express refusal of any recommended treatment. Thus, the trial court did not abuse its discretion in issuing the mitigation of damages instruction.

## VI. Improper Bias

Finally, Popal argues that he should be awarded a new trial because "the trial judge's conduct and remarks biased and prejudiced the jury" against Popal and his evidence. According

to Popal, "the trial judge's bias was apparent through his conduct and comments." We hold that, because Popal did not make these arguments to the trial court, they are waived on appeal. As we stated earlier, under Rule 5A:18 a litigant must make a specific and timely objection to the trial court to preserve a claim on appeal. Popal raises no exceptions to the preservation requirement in his opening brief, and "we never invoke them *sua sponte*." *White v. White*, 56 Va. App. 214, 220 (2010).

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*