### Richmond

ANNA L. TODT

v.

VERNA KATE SHAW

January 22, 1982.

Record No. 791490.

Present: Carrico, C.J. Cochran, Poff, Compton, Thompson, and Stephenson, JJ.

*Frances W. Flannagan (Woodward, Miles & Flannagan, P.C.* on brief), for appellant.
*George M. Warren, Jr.,* for appellee.

THOMPSON, J., delivered the opinion of the Court.

Verna Kate Shaw recovered a judgment for $25,000 against Anna L. Todt for personal injuries resulting from a motor vehicle

accident when the vehicle operated by Shaw was struck from the rear by the vehicle operated by Todt. Todt alleges that the lower court erred in (1) permitting Shaw and her husband to testify about her physical condition and lost wages, (2) granting for Shaw instructions one and three, (3) failing to hold that Shaw was guilty of contributory negligence as a matter of law, and (4) refusing to set aside the verdict because it was excessive. We hold that each of these issues was properly decided in the trial court, and we affirm its judgment.

Shaw's evidence reveals that on October 25, 1977, around noon, Todt's vehicle struck her from the rear while Shaw, signaling for a left turn, was stopped for oncoming traffic. The accident occurred on a straight, slightly downgrade stretch of Randolph Street, wet from a recent rain shower.

Shaw testified that she had slowed down, turned her left signal light on, and "was waiting for two cars to pass by" when Mrs. Todt "run into the back of me . . . . My little girl, it knocked her from the front seat to the back seat and then I couldn't even hardly move, to try to get her, to see if she was hurt. I couldn't even turn my neck to try to reach for her in the back seat." On cross-examination, Shaw admitted that she had not looked in her rear-view mirror at any time before the accident.

Shaw further testified that she had been transported to the emergency room of a local hospital by the life-saving crew after the accident. There, the staff x-rayed her back and neck and prescribed medication before releasing her that same day. She continued to experience pain and discomfort, and the hospital staff referred her to Dr. James G. McFaddin, an orthopedic surgeon, whom she saw on November 15, 1977. She stated that she made several visits over the next ten months to the doctor. The doctor diagnosed her condition as sprains of the ligaments and muscles in the neck and upper back and testified at trial that he "considered her progress to be quite satisfactory and ordinary." When asked to predict how long a patient might suffer from an injury of this type, Dr. McFaddin replied "[t]here are many variables. It depends on the condition of the individual, the age, the condition of the spine, the force or velocity of the injury, emotional factors."

Shaw testified that she had medical bills of $233.00 and that she was no longer able to work at her job as a waitress, causing her to lose $101.20 a week income. She also stated that she was not able to perform any household chores without assistance.

Arlie Key, an eyewitness to the accident, testified that Shaw had been stopped with her signal light on and that he saw Todt's car approaching Shaw's at a "good sized rate of speed." Key stated that after the collision "[Shaw's] car went on up the street approximately 100 to 150 feet . . . nearly to the next street."

Michael Shaw, husband of Verna Shaw and an eyewitness to the accident, corroborated at trial the testimony of his wife and the witness Key.

Todt testified that Shaw had not given a signal prior to stopping and had only applied brakes. Todt stated that "after I came down the hill, I saw her brake lights. I applied my brakes and flammed [sic] into her . . . . Mrs. Shaw sat there maybe a minute. Then she moved the car up about two car lengths and stopped on the righthand lane of the road."

## I. *Physical Condition of Shaw.*

■ Todt alleges that the trial court committed error in admitting evidence of Shaw and her husband as to the physical disability of Shaw, her inability to work, and her lost wages. Shaw testified that she had been working 44 hours per week as a waitress at a fast-food restaurant for approximately one year prior to the accident and at the time of trial had not returned to her job because her "back and neck is still giving [her] trouble;" that any strenuous activity "caused my back and stuff to start aching, feel like something hit me in the back and my neck start hurting, just can't do anything like I used to any more;" that prior to the accident her health had been good, she had done normal household chores and had taken care of her two-year-old daughter; and that she had grossed $101.20 per week in wages. Todt contends that the inability of Shaw to perform her ordinary labors as a housewife, mother, and waitress could only be established by expert medical testimony.

Following a consistent line of Virginia cases, we recently rejected the same argument in *Peterson* v. *Neme,* 222 Va. 477, 483, 281 S.E.2d 869, 872 (1981), where we said:

As phrased by Peterson, the question presented by this assignment of error is: "Is the plaintiff's opinion that she was unable to work at her employment as a direct result of injuries sustained in an auto accident admissible without the testimony of a physician or other medical expert?"

It is implicit in our holding in *Sumner v. Smith,* 220 Va. 222, 257 S.E.2d 825 (1979), that lay testimony of causal connection between an automobile accident and injury is admissible for whatever weight the fact finder may choose to give it, even when medical testimony fails to establish causal connection expressly.

To the same effect are *Phillips v. Stewart,* 207 Va. 214, 220, 148 S.E.2d 784, 789 (1966); *Pepsi-Cola Bottling Co. v. McCullers,* 189 Va. 89, 97-98, 52 S.E.2d 257, 260-61 (1949); *Chesapeake & Ohio Railway Co. v. Hoffman,* 109 Va. 44, 64-65, 63 S.E. 432, 439 (1909); and *Blue Ridge Light Co. v. Price,* 108 Va, 652, 656, 62 S.E. 938, 940 (1908). The ruling of the trial court in this case was clearly in conformity with the foregoing precedents.

## II. *Instructions 1 and 3.*

Todt contends there is no evidence to support Instruction 1.[1] This same instruction, with a slight variation in paragraph (3), was approved in *Goodwin and Reid v. Gilman,* 208 Va. 422, 430, 157 S.E.2d 912, 919 (1967).

We think the granting of Instruction 1 was supported by ample evidence in this case. From the evidence, the jury could have concluded that Todt was not keeping a proper lookout when she crashed into Shaw's vehicle, that she was exceeding a reasonable speed under the traffic conditions existing at the time, and that she did not have her vehicle under proper control.

Todt also argues that Shaw's inability to work was not proved by competent evidence, but we have already rejected that question under part I hereof. Shaw testified that she had not

---

[1] Instruction 1 reads:

The Court instructs the jury that it is the duty of the operator of a motor vehicle to exercise ordinary care:

(1) To keep a proper lookout;

(2) To keep his vehicle under proper control; and

(3) To operate his vehicle at a reasonable speed under the circumstances and traffic conditions then and there existing, regardless of any posted speed limit.

And if you believe from a preponderance of the evidence that the defendant failed to exercise ordinary care in the performance of either or both of the foregoing duties then she was negligent; and if you further believe from such evidence that any such negligence was a proximate cause of the collision, then, unless the plaintiff was guilty of negligence which proximately contributed to cause the collision, you shall find your verdict in favor of the plaintiff.

worked since the accident on October 25, 1977, 52 weeks before the jury trial. At the rate of $101.20 per week, she had lost a total of $5,262.40 in wages.

■ Lastly, Todt contends it was error to give subparagraph 3 of Instruction 3[2] because there is no evidence to support future inconvenience and discomfort. But Shaw was still suffering from her injuries at the time of trial. A similar argument, based upon similar evidence, was made and rejected in *Gwaltney* v. *Reed,* 196 Va. 505, 508, 84 S.E.2d 501, 502-03 (1954).[3]

We find no error in the granting of Instructions 1 and 3.

### III. *Contributory Negligence of Shaw.*

■ Todt contends that Shaw was guilty of contributory negligence because, she says, Shaw did not give a proper left-hand signal and did not look in her rear-view mirror prior to making the turn. Shaw testified that as soon as she slowed down she turned her left-turn signal on, stopped, and waited for two cars to pass by her. She stated one car had already passed her and the second car "got half-way past" her when the accident happened. On cross-examination, Shaw admitted that she had not looked in her rear-view mirror before stopping, but denied waiting until she had completely stopped to turn her signal light on.

The witness Key testified that the Shaw vehicle, when he first saw it, was stopped with the left-turn signal blinking and Todt's

---

[2] Instruction 3 reads in part:

The Court instructs the jury that if from the evidence and the other instructions of the Court you find your verdict in favor of the plaintiff, then in assessing the damages to which she is entitled you may take into consideration any of the following which you believe from the evidence to have resulted from the collision:

. . . .

3. Any inconvenience and discomfort caused in the past and any which will probably be caused in the future;

[3] In *Gwaltney,* we said:

After the accident the plaintiff suffered from a severe pain in her back . . . . Six weeks later she was still in pain. On March 6 an orthopedic surgeon diagnosed her trouble . . . . On March 23 he found she still had pain in her lower back and he prescribed a heavy corset to immoblize her back. On May 8 he found her condition was better but pain recurred when she left off the corset. At the time of the trial she was still wearing the corset and testified that her injury was still very painful.

The evidence warranted the giving of the instruction as to future pain and disability and the refusal of the one which would have told the jury that there was no such evidence.

196 Va. at 508, 84 S.E.2d at 502-03.

vehicle was approximately six car lengths away (90 to 100 feet). The testimony of Key and Shaw support a finding by the jury that Shaw gave a proper left-turn signal.

Shaw admitted that she did not look to the rear, but such a duty is not invariably required of one in her situation. In *Brown* v. *Wright,* 216 Va. 10, 11-12, 216 S.E.2d 13, 15 (1975), we said:

> The basis of the motion to strike was that as a matter of law Brown was guilty of negligence which was a proximate cause of the accident in that, "by her own testimony," she failed "to look in her rear view mirror before bringing her vehicle to a stop." The evidence, however, viewed in the light most favorable to Brown, does not establish that her actions constituted contributory negligence as a matter of law. It does no more than raise an issue of fact to be resolved by the jury. Brown's testimony was that she looked in her rear view mirror as she drove along Route 337 but did not look as she prepared to make her left turn. The driver of a front car, however, is not required to be constantly on the lookout for a following vehicle. It was for the jury to determine whether she acted with reasonable care under the circumstances. [Citations omitted.]

The issue of contributory negligence of Shaw was submitted to the jury under appropriate instructions, and the evidence, viewed in the light most favorable to Shaw, supports the jury's finding.

### IV.  *Amount of Verdict.*

■ Todt contends that the verdict is so out of proportion to Shaw's injuries and medical expenses that its size is sufficient, standing alone, to stamp it as being unfair and excessive. Shaw proved $233.00 in medical expenses and lost wages of $5,262.40, and at the time of trial, one year after the accident, she was unable to work and still in great pain. Shaw contends that *Murphy* v. *Virginia-Carolina Freight Lines,* 215 Va. 770, 213 S.E.2d 769 (1975), is controlling, and we agree.[4]

---

[4] In Murphy, we said:

> In personal injury cases, where the action merely sounds in damages, and where there is no rule for measuring such damages, the amount to be awarded is left largely to the discretion of the jury. The verdict of the jury, arrived at upon competent evidence and controlled by proper instructions, has always been held to be invi-

For the foregoing reasons, the judgment of the trial court will be

*Affirmed.*

olate against disturbance by the courts. *See Smithey* v. *Sinclair Refining Co.,* 203 Va. 142, 145, 122 S.E.2d 872, 875 (1961). This is particularly true where the evidence establishes that the injured party has suffered pain for a prolonged period of time as there has not yet been discovered any standard by which to measure, in dollars and cents, the value of physical pain and suffering. *See Dinwiddie* v. *Hamilton,* 201 Va. 348, 352, 111 S.E.2d 275, 278 (1959).
215 Va. at 775, 213 S.E.2d at 773.