## GLENNIS T. ROBINSON

V.

## OLD DOMINION FREIGHT LINE, INC.

Record No. 860480

September 23, 1988

Present: All the Justices

*William T. Kilduff (Walter H. Emroch & Associates*, on brief), for appellant.

*W. Joseph Owen, III (Cowan & Owen*, on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

The sole issue in this appeal is whether the trial court erred in holding that the jury's verdict was excessive and in ordering a remittitur.

Glennis T. Robinson sued Old Dominion Freight Line, Inc. (Old Dominion), to recover damages for injuries she sustained in a motor vehicle collision. The jury returned a verdict in Robinson's favor and awarded her $30,000 in damages. The trial court ruled that the damages were excessive and ordered Robinson to accept either a remittitur of $15,000 or a new trial on all issues. Pursuant to Code § 8.01-383.1, Robinson accepted the remittitur under protest and appealed the trial court's judgment.

On May 15, 1984, Robinson was a passenger in a pickup truck being operated by her brother-in-law. The pickup truck was pro-

ceeding north on Belvidere Street in the City of Richmond. As it approached the intersection of Belvidere Street and Idlewood Avenue, the truck was in the left lane of travel. At that time, an Old Dominion tractor-trailer turned in front of the pickup truck, and the left rear end of the trailer struck the right front end of the pickup truck. The pickup truck was knocked against the median strip, jarring Robinson twice, first when the vehicles collided and again when the pickup truck struck the median strip.

The impact caused Robinson's head to hit the dashboard and "jerked [her] over," injuring her neck and back. At first, she was in something "like . . . a state of shock." A short time later, she developed a headache, an aching in her neck and back, and a sensation "like pins" sticking in her legs.

After attempting to treat the pain with Tylenol and hot baths for the next week, Robinson went to Dr. Alfred B. Pedynkowski, a general practitioner in Richmond. Robinson had been a patient of Dr. Pedynkowski since 1980, and he had treated her for back problems on two occasions prior to the accident.

Tests performed by Dr. Pedynkowski revealed a tightness in Robinson's paralumbar and paracervical muscles and a moderately limited range of motion in her neck and back. Dr. Pedynkowski also determined through X-rays that Robinson had "an increase in the normal curvature of the lumbar spine," making the spine more susceptible to injury.

Dr. Pedynkowski prescribed analgesics, muscle relaxants, and physiotherapy treatment consisting of hot packs. Robinson received a total of 20 hot pack treatments between May 22 and July 2, 1984.

Because the pain persisted, Robinson, in early July 1984, engaged the services of Dr. John Ayres, an orthopedic specialist. Dr. Ayres diagnosed Robinson as having a cervical and lumbar strain superimposed upon mild, preexisting arthritis. He explained that when a strain occurs, muscles are stretched and nerve endings are damaged. When the muscles heal, scar tissue is formed which is not as "contractile" as normal tissue. Dr. Ayres referred Robinson to Dr. Pedynkowski for a continuation of treatment.

Robinson returned to Dr. Pedynkowski on July 16, August 10, and August 22, 1984, still complaining of neck and back pain. By the end of August 1984, Robinson's condition had improved, although she continued to experience pain in her neck and back.

She again saw Dr. Pedynkowski in March 1985. On each occasion that she saw the doctor, he prescribed more analgesic.

Because of her injury, Robinson's normal activities were severely limited during the period of her treatments. For example, she was unable to use a vacuum cleaner and to wash clothes. For six weeks, she could not attend church.

At the time of trial, more than a year-and-a-half after the accident, Robinson was still experiencing pain in her neck and back. She has continued to take medication for the pain. As a result of the accident, Robinson incurred $2,212 in medical bills.

Because there is no clear criterion for assessing the damages in a personal injury case, the amount to be awarded is left largely to a jury's discretion. *TransiLift Equipment, Ltd.* v. *Cunningham*, 234 Va. 84, 97, 360 S.E.2d 183, 191 (1987); *Taylor* v. *Maritime Overseas Corp.*, 224 Va. 562, 567, 299 S.E.2d 340, 343 (1983); *Murphy* v. *Va. Car. Freight Lines*, 215 Va. 770, 775, 213 S.E.2d 769, 773 (1975); *Smithey* v. *Refining Company*, 203 Va. 142, 145, 122 S.E.2d 872, 875 (1961). "This is particularly true where the evidence establishes that the injured party has suffered pain for a prolonged period of time as there has not yet been discovered any standard by which to measure, in dollars and cents, the value of physical pain and suffering." *Murphy*, 215 Va. at 775, 213 S.E.2d at 773.

This is not to say, however, that a jury's verdict is not subject to a trial court's control. To the contrary, "[a] healthy administration of justice requires that, in a proper case, [a trial court] must take action to correct what plainly appears to be an unfair verdict." *Smithey*, 203 Va. at 146, 122 S.E.2d at 875. Indeed, a trial court's authority over a verdict "is an ancient and accepted part of the common law." *Id.* This common-law authority includes a trial court's power to order a remittitur, *see Ches. & O. Ry. Co.* v. *Arrington*, 126 Va. 194, 217, 101 S.E. 415, 423 (1919), a rule that has been "tacitly recognized and impliedly ratified" by the General Assembly, *Bassett Furniture* v. *McReynolds*, 216 Va. 897, 910, 224 S.E.2d 323, 331 (1976); *see* Code §§ 8.01-383, -383.1.

In *Hogan* v. *Carter & Grinstead*, 226 Va. 361, 310 S.E.2d 666 (1983), we reiterated the standards of appellate review of an order of remittitur:

On appeal in such cases, this Court does not sit to determine whether a damage award is excessive as a matter of law. While a trial judge may not arbitrarily substitute his opinion for that of the jury, he has both the power and the duty to correct a verdict which he finds so excessive as to shock the conscience of the court or to compel the conclusion that the verdict was the product of passion or prejudice or some misunderstanding of the facts or the law. When the judge makes such a finding, it is our sole function to determine whether he has abused the discretion accorded him by the statutes and the common law.

We can make that determination only when the judge states the reasons underlying his decision. If the record on appeal contains no such statement, we will reverse the order of remittitur, reinstate the damage award, and, absent reversible error on the issue of liability, enter final judgment on the verdict. On the other hand, if the judge's statement shows that "in reaching his conclusion, he considered *factors in evidence relevant to a reasoned evaluation of the damages incurred and to be incurred*, his order will not be disturbed on appeal if the recovery after remittitur bears a reasonable relation to the damages disclosed by the evidence." [*Bassett*,] 216 Va. at 912, 224 S.E.2d at 332.

226 Va. at 372-73, 310 S.E.2d at 672 (emphasis added).

■ In the present case, the trial court did state its reasons for ordering the remittitur. In doing so, however, the court erroneously considered, *inter alia*, two factors that are not in evidence, thereby substituting its opinion for that of the jury.

■ First, in its letter opinion, the trial court relied upon "its review of various highly regarded valuation handbooks." The unidentified handbooks were not offered for admission into evidence. Obviously, to have admitted them into evidence would have been error. Clearly, the valuation handbooks were an irrelevant and improper source for the court to consider in evaluating Robinson's damages.

■ Second, the trial court opined that Robinson's medical bills were "exorbitant." The record, however, does not support this conclusion. Old Dominion raised no objection to the medical bills when Robinson introduced them into evidence and did not challenge the reasonableness or necessity of the expenses at trial.

We conclude, therefore, that the trial court abused its discretion in relying upon factors unsupported by the evidence to justify the remittitur. Consequently, we will reverse and vacate the judgment, reinstate the verdict, and enter final judgment for Robinson.

*Reversed and final judgment.*