Present:  All the Justices

CHARLES B. POULSTON, JR.

OPINION BY JUSTICE ELIZABETH B. LACY

v.     Record No. 951184          March 1, 1996

BOBBY ROCK

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge

In this defamation action, we consider whether the trial
court abused its discretion in determining that a jury verdict
for compensatory and punitive damages was excessive and
requiring a plaintiff to remit part of the verdict amount and
accept judgment for the reduced sum.

Charles B. Poulston, Jr. and Bobby Rock were acquaintances
and shared an interest in custom built motorcycles.  In January
1993, Poulston obtained a judgment against Rock for negligently
painting Poulston's motorcycle.  Rock failed to pay the amount
of the judgment and Poulston instituted garnishment
proceedings.  When Rock was served with the garnishment
summons, he placed a call to Poulston's employer, DuPont
Corporation, and spoke with the labor relations manager.  Rock
told the manager that Poulston had stolen some nuts and bolts
from DuPont's inventory and had given them to Rock for use in
assembling a motorcycle.  Rock also told the manager that he
wanted to "get" Poulston in retaliation for Poulston's
garnishment proceeding.  Rock repeated these allegations to
other DuPont employees.  DuPont's internal investigation based
on Rock's allegations disclosed no evidence of Poulston's
alleged theft.

Rock repeated his allegations, that Poulston stole the nuts and bolts, to participants in a custom motorcycle show. Rock also confronted Poulston on two separate occasions, calling him a liar and a thief. These incidents occurred in restaurants and the accusations were heard by other patrons.

Poulston filed this action against Rock seeking $40,000 in compensatory damages and $60,000 in punitive damages for Rock's defamatory statements. Following trial, the jury found in favor of Poulston and awarded compensatory damages of $10,000 and punitive damages of $25,000. Rock moved to set the verdict aside, arguing that the damage amounts were excessive.

The trial court, in a letter opinion, determined that "the amount of compensatory damages awarded in this case is shockingly excessive" and "should be reduced to $1,000." The trial court further found that the punitive damages were also excessive and should be reduced to $2,500. Pursuant to Code § 8.01–383.1(A),[1] the trial court entered a final order granting judgment in favor of Poulston but remitting the damage

_____

[1] Code § 8.01–383.1(A) states:

In any action at law in which the trial court shall require a plaintiff to remit a part of his recovery, as ascertained by the verdict of a jury, or else submit to a new trial, such plaintiff may remit and accept judgment of the court thereon for the reduced sum under protest, but, notwithstanding such remittitur and acceptance, if under protest, the judgment of the court in requiring him to remit may be reviewed by the Supreme Court upon an appeal awarded the plaintiff as in other actions at law; and in any such case in which an appeal is awarded the defendant, the judgment of the court in requiring such remittitur may be the subject of review by the Supreme Court, regardless of the amount.

award to "$1,000 compensatory and $2,500 punitive or else there will be a new trial on all issues." Under protest, Poulston accepted the damage amounts ordered by the trial court and filed this appeal.

## I. Compensatory Damages

Generally, a trial court should not disturb a jury verdict establishing damages which has been fairly rendered and is based on competent evidence. Nevertheless, a jury verdict is not beyond the control of the courts. Courts have the duty to correct a verdict that plainly appears to be unfair or would result in a miscarriage of justice. Edmiston v. Kupsenel, 205 Va. 198, 202, 135 S.E.2d 777, 780 (1964); Smithey v. Sinclair Refining Co., 203 Va. 142, 146, 122 S.E.2d 872, 875 (1961).

Circumstances which compel setting aside a jury verdict include a damage award that is so excessive that it shocks the conscience of the court, creating the impression that the jury was influenced by passion, corruption, or prejudice; that the jury has misconceived or misunderstood the facts or the law; or, the award is so out of proportion to the injuries suffered as to suggest that it is not the product of a fair and impartial decision. Edmiston, 205 Va. at 202, 135 S.E.2d at 780; Smithey, 203 Va. at 146, 122 S.E.2d at 875-76. Setting aside a verdict as excessive under these conditions is an exercise of the inherent discretion of the trial court and, on appeal, the standard of review is whether the trial court abused its discretion. Bassett Furniture Indus. v. McReynolds, 216 Va. 897, 911, 224 S.E.2d 323, 332 (1976).

The standard under which we review the trial court's exercise of discretion under these circumstances was enunciated in Bassett Furniture:

> In determining whether a trial court has abused the discretion . . . we must examine the grounds upon which he based his order of remittitur. "[T]he record must show the grounds relied on in support of such action, otherwise it cannot be upheld." . . .
> On the other hand, when it appears from the record before us that the trial judge made a finding that the verdict was plainly excessive and remittitur should be ordered and that, in reaching his conclusion, he considered factors in evidence relevant to a reasoned evaluation of the damages incurred and to be incurred, his order will not be disturbed on appeal if the recovery after remittitur bears a reasonable relation to the damages disclosed by the evidence. "Reasonableness" in this context is the standard by which the exercise of discretion must be tested by this Court.

216 Va. at 911–12, 224 S.E.2d at 332 (citation and footnote omitted).

Applying this standard requires us to make a number of determinations. First, we must find in the record both the trial court's conclusion that the verdict was excessive and a demonstration that, in reaching that conclusion, the trial court considered "factors in evidence relevant to a reasoned evaluation of the damages." Id. Then we must determine whether the amount of the recovery after the remittitur bears a "reasonable relation to the damages disclosed by the evidence." Id. We review the reasonableness of the trial court's evaluation of the relevant damage evidence and the reasonableness of the relation between the amount of the

remittitur and that evidence.[2]

In this case, the record contains the trial court's letter opinion in which it stated its finding that the verdict was "shockingly excessive" and set out the factors it considered in reaching that conclusion.  The trial court did not indicate whether it concluded that the verdict created the impression that the jury was influenced by passion or prejudice, that the jury misunderstood the law or facts, or that the verdict was not the result of a fair and impartial decision.  However, a trial court does not have to use the specific words that the verdict was the result of passion or prejudice, a misunderstanding of the facts or law, or not a product of a fair and impartial decision, so long as one of those factors may be "fairly inferred from the reasons given."  Caldwell v. Seaboard Sys. R.R., Inc., 238 Va. 148, 157, 380 S.E.2d 910, 915

---

[2] We reject Poulston's argument that our review of the trial court's exercise of discretion is limited to review of the amount of the remittitur only.  Nothing in Bassett or the subsequent cases applying the principles established in Bassett indicate such a limited review.  The Court in Bassett carefully reviewed the grounds on which the trial judge concluded that the jury verdict was excessive, and the holding in the case specifically addresses both the determination that the verdict was excessive and the amount of the remittitur:  "we cannot say that the trial court erred in finding the jury's award excessive or that the recovery after remittitur bears no reasonable relation to the damages disclosed by the evidence."  Id. at 913, 224 S.E.2d at 333.  Furthermore, Poulston's reading of Bassett places beyond appellate review the trial court's initial determination that the verdict was excessive. This position ignores the requirement that the verdict be set aside only if it was the result of passion, prejudice, corruption, a misunderstanding of the facts or law, or not a product of fair and impartial decision making because it is so out of proportion to the injuries suffered.

(1989), cert. denied, 493 U.S. 1095 (1990).

Here the trial court's statement that the "size of the compensatory damage award is without support in the evidence and grossly in excess of the actual injuries suffered," is in accord with a conclusion that the award was excessive because it was so out of proportion to the injuries suffered as to suggest that it was not the product of a fair and impartial decision.

In arriving at its conclusion, the trial court acknowledged that the statements made by Rock were defamatory per se, and that, under these circumstances, injury to personal and business reputation is presumed. Slaughter v. Valleydale Packers, Inc., 198 Va. 339, 347, 94 S.E.2d 260, 266 (1956). The trial court further recognized that the defamed party need not produce any evidence showing actual or pecuniary loss to recover compensatory damages. See Great Coastal Express, Inc. v. Ellington, 230 Va. 142, 151-52, 334 S.E.2d 846, 853 (1985). Nevertheless, the trial court explained its conclusion as follows:

> Plaintiff presented no proof that his reputation was even slightly diminished by defendant's defamatory statements. No inferences may be drawn from the proof that plaintiff's reputation was harmed or tainted in any way by the defamation. On the contrary, plaintiff's own witnesses testified that they did not believe defendant's accusation, and held plaintiff in the same high esteem after learning of defendant's accusation as before. In addition, the evidence was devoid of proof that plaintiff suffered any pecuniary loss from the defamatory statements. Plaintiff remains employed at DuPont, suffered no diminution in salary, and is held in high regard by his fellow employees and superiors. Finally, plaintiff offered no evidence that he suffered any physical or emotional injury, save for some

embarrassment sustained from good natured joking of his peers.  Accordingly, the size of the compensatory damage award is without support in the evidence, and grossly in excess of the actual injuries suffered, and thus should be reduce[d] to $1,000.

This explanation is based entirely on the absence of evidence showing actual injury or damage.  Such a focus ignores Poulston's acknowledged right to recover compensatory damages absent any proof of injury or of the quantum of injury.  "A plaintiff who proves the publication of words actionable per se is simply relieved of the necessity of proving the quantum of his damages for injury to reputation, humiliation, and embarrassment."  Great Coastal Express, 230 Va. at 152, 334 S.E.2d at 853.

The trial court's explanation also ignores the longstanding principle that, even in the absence of any evidence of pecuniary loss, the damages which the injured party is entitled to recover may be substantial.  Slaughter, 198 Va. at 348, 94 S.E.2d at 266; Snyder v. Fatherly, 158 Va. 335, 351, 163 S.E. 358, 364 (1932); Williams Printing Co. v. Saunders, 113 Va. 156, 180, 73 S.E. 472, 478 (1912).  This legal principle presuming injury to reputation, humiliation, and embarrassment, although not a factor "in evidence," is relevant and must be considered in any determination of damages based on defamation per se.

Furthermore, in considering the evidentiary record, the trial court was required, as are we, to consider the evidence in the light most favorable to Poulston, the party who received the jury verdict.  Caldwell, 238 Va. at 155, 380 S.E.2d at 914.

The trial court limited its review of reputation injury to testimony of those who were acquainted with Poulston. Poulston, however, testified that he believed that injury to his reputation had occurred among those employees whom he did not know, or who did not know him personally. The publication of the remarks in public restaurants expanded the size of the class of persons who could have formed an opinion of Poulston based on those defamatory statements.

The evidence also showed that, prior to the publication of the defamatory statements, Poulston had an untarnished reputation. We have said that one with an unblemished reputation is entitled to more damages when subjected to defamatory statements than one whose reputation is "little hurt" by the statements. Stubbs v. Cowden, 179 Va. 190, 200, 18 S.E.2d 275, 280 (1942); Weatherford v. Birchett, 158 Va. 741, 747, 164 S.E. 535, 537 (1932). Additionally, the trial court did not consider evidence that DuPont made a permanent record of Rock's allegations that Poulston was a thief and that such a record might affect Poulston in the future.

The trial court's decision to reduce rather than eliminate the compensatory damage award does not reflect a reasonable consideration of the factors set out above. The amount chosen by the trial court, $1,000, as Poulston argues, is a nominal or trivial amount. Such an amount is inconsistent with the right to recover substantial damages which we have said attaches to injuries suffered from statements which are defamatory per se, Slaughter v. Valleydale Packers, Inc., 198 Va. at 347, 94

S.E.2d at 266, and the damages available to one enjoying a good reputation, e.g., Stubbs, 179 Va. at 200, 18 S.E.2d at 280.

Because the trial court failed to consider all the relevant factors necessary for a proper evaluation of the compensatory damages, we conclude that the trial court abused its discretion in determining that the jury verdict for $10,000 in compensatory damages was excessive and ordering a remittitur, reducing the recovery to $1,000.

## II. Punitive Damages

Next, we address the issue of punitive damages. Recently, we set forth the applicable standard of appellate review in this type of case. In Williams v. Garraghty, 249 Va. 224, 455 S.E.2d 209, cert. denied, ___ U.S. ___, 116 S. Ct. 66 (1995), we rejected an invitation to rule that the standard should merely be whether the trial court abused its discretion. But see Bain v. Phillips, 217 Va. 387, 398, 228 S.E.2d 576, 584 (1976). Instead, we held that in reviewing the order of a trial court imposing or refusing to impose a remittitur of punitive damages in a defamation action, "we shall make an independent examination of the entire record to determine whether the trial court acted properly. In doing so, we will give substantial weight to the trial court's action and affirm it, unless, from our view of the record, the trial court acted improperly." Williams, 249 Va. at 237, 455 S.E.2d at 217.

Our independent review of the award of punitive damages leads us to conclude that the award should not have been set

aside.[3]  The trial court concluded that the jury award of $25,000 in punitive damages was excessive and ordered a remittitur "based both on the lack of evidence of real damage suffered and the reduction in the [a]mount of the compensatory award."  In light of our discussion and disposition of compensatory damages, we cannot ascribe substantial weight to the trial court's action in our review in this case.

It is uncontroverted that Rock was out to "get" Poulston and sought to accomplish this end by interfering with Poulston's employment and reputation.  Rock reiterated the defamatory statements in the workplace and in public places, further injuring Poulston's reputation.  Such actions unquestionably fall within the category of malice and support the jury award of punitive damages.

Review of the amount of punitive damages includes consideration of reasonableness between the damages sustained and the amount of the award and the measurement of punishment required, The Gazette, Inc. v. Harris, 229 Va. 1, 51, 325 S.E.2d 713, 746, cert. denied, 472 U.S. 1032 (1985), whether the award will amount to a double recovery, Tazewell Oil Co. v. United Virginia Bank, 243 Va. 94, 113, 413 S.E.2d 611, 621 (1992), the proportionality between the compensatory and punitive damages, and the ability of the defendant to pay,

---

[3] There has been no challenge to the award of punitive damages as violative of any due process rights and our independent review is not based on constitutional considerations.

<u>Stubbs</u>, 179 Va. at 200-01, 18 S.E.2d at 280.

Double recovery is not an issue in this case. The relationship between $10,000 compensatory and $25,000 punitive damages is not unreasonable or strikingly out of proportion. The record reflects that Rock has assets totaling approximately $186,000, with a monthly income of about $2,100. Payment of a $25,000 punitive damage award, approximately 13% of Rock's assets, does not present an undue burden.

As discussed previously, the evidence of actual damages sustained must be accompanied by the presumption of actual injury to reputation, embarrassment, and humiliation in these types of cases. Indeed, punitive damages can be awarded in defamation <u>per</u> <u>se</u> cases even in the absence of any award of compensatory damages. <u>Newspaper Publishing Co. v. Burke</u>, 216 Va. 800, 805, 224 S.E.2d 132, 136 (1976). Therefore, we cannot say that the punitive damage award is unreasonable on this basis.

Finally, we cannot say that a punitive damage award of $25,000 is an inappropriate punishment for Rock's egregious conduct, particularly conduct which was undertaken in direct response to Poulston's attempt to utilize the legal system to collect a debt. Such an award also serves a deterrent effect, notifying others who would try to harm an individual's personal or professional reputation solely because that person had invoked the assistance of the legal system.

Accordingly, we will reverse that portion of the trial court's judgment setting aside the jury verdict for

compensatory and punitive damages and ordering a remittitur, and we will reinstate the jury verdict.

<u>Reversed and final judgment.</u>

JUSTICE COMPTON, with whom CHIEF JUSTICE CARRICO joins, dissenting.

"In Virginia, the doctrine of stare decisis is more than a mere cliche. That doctrine plays a significant role in the orderly administration of justice by assuring consistent, predictable, and balanced application of legal principles. And when a court of last resort has established a precedent, after full deliberation upon the issue by the court, the precedent will not be treated lightly or ignored, in the absence of flagrant error or mistake." <u>Selected Risks Ins. Co.</u> v. <u>Dean</u>, 233 Va. 260, 265, 355 S.E.2d 579, 581 (1987).

Here, the majority gives light treatment to settled precedent and in the process disregards a rule of appellate review that has been followed in this Court in case after case for the last 20 years. While laboring to put a gloss on the existing standard governing how we review a trial court's order of remittitur of a compensatory damage award, a standard the majority apparently does not like, it effectively has overruled a portion of <u>Bassett Furniture Indus., Inc.</u> v. <u>McReynolds</u>, 216 Va. 897, 224 S.E.2d 323 (1976).

The issue in the case is whether the trial court correctly required the plaintiff to remit part of the jury verdict for both compensatory and punitive damages and to accept judgment for the reduced sum.

Appellant Charles B. Poulston, Jr., filed this action against appellee Bobby Rock seeking compensatory and punitive damages for defamatory oral statements made to representatives of plaintiff's employer. According to the motion for judgment, defendant maliciously and falsely stated that plaintiff had given defendant "bolts which were the property of DuPont Corporation" and that plaintiff had "fabricated a motorcycle part of cast iron out of DuPont materials," using that part on plaintiff's motorcycle. Responding, defendant denied the allegations.

At trial, a jury found for the plaintiff and awarded compensatory damages of $10,000 and punitive damages of $25,000. The defendant moved to set the verdict aside, arguing that the amount of the damages was excessive.

Subsequently, the trial court, in a letter opinion, granted defendant's motion and remitted 90% of the award pursuant to Code § 8.01-383.1(A) (authorizes trial court to order remittitur and provides for appellate review if plaintiff accepts reduced sum under protest). We awarded the plaintiff this appeal from the March 1995 order entering judgment for the plaintiff for $1,000 in compensatory damages and $2,500 in punitive damages.

According to settled principles of appellate review, I shall state the facts in the light most favorable to the plaintiff, who prevailed before the jury. Plaintiff, a welder employed by DuPont, and defendant were acquainted. Both shared an interest in the hobby of constructing, displaying, and

riding custom-made motorcycles.

In January 1993, plaintiff had obtained a judgment for approximately $2,200 against defendant arising from a dispute between the parties over painting performed by defendant on plaintiff's motorcycle. On May 7, 1993, defendant was served with a summons in garnishment, requested by plaintiff in an effort to collect the judgment.

On May 7, following service of the summons, defendant made a telephone call to a DuPont labor relations manager in an effort "to get even with" plaintiff. Defendant stated "that he knew an employee at DuPont by the name of Poulston who had taken stainless steel bolts from DuPont" for use in building motorcycles. Defendant also stated that plaintiff fabricated motorcycle parts while on the job at DuPont, using its materials. Defendant testified that, at the time he made the call, he "hope[d]" plaintiff would be "fired" from his job because, according to defendant, plaintiff had "lied so much" during the prior litigation.

DuPont conducted an investigation into defendant's charges, which plaintiff "adamantly denied." Defendant's statements became part of a permanent DuPont record and were disseminated to a number of DuPont employees. Eventually, DuPont concluded that the statements were false. Also, about the same time in an incident in a local restaurant, defendant, in a voice loud enough to be heard by others, accused plaintiff of being a liar and a thief.

The trial court, in the letter opinion granting

defendant's motion to set aside the verdict, discussed the evidence about the effect the defamatory remarks had upon the plaintiff. When learning about defendant's call to the labor relations manager, plaintiff appeared not to take the matter seriously, and smiled and laughed about it. Plaintiff's witnesses testified that they did not believe defendant's accusations and had the same high regard for the plaintiff after the incident as before. Witnesses described plaintiff's present reputation for honesty and integrity as "immaculate" and as "A-1." The court pointed out, "Defendant's accusation did not adversely affect plaintiff's employment status or cause diminution in his salary or benefits. No evidence was presented that plaintiff sought medical treatment or suffered any physical or emotional injuries as a result of defendant's actions although plaintiff testified that his fellow employees kidded him about the matter."

The trial court reviewed pertinent cases, noted that the defamatory statements were actionable per se, and observed that here damages for injury to reputation were presumed, the plaintiff not being required to show actual pecuniary loss to recover compensatory damages. The court then ruled "that the amount of compensatory damages awarded in this case is shockingly excessive." The court stated that "the size of the compensatory damage award is without support in the evidence, and grossly in excess of the actual injuries suffered, and thus should be reduce[d] to $1,000."

Addressing the punitive damage award, the trial court also

reviewed the applicable principles. The court said that "the jury could have reasonably found the requisite level of malice to justify an award of punitive damages." Nevertheless, the court continued, the award of $25,000 was excessive, "in light of the purpose punitive damages are to serve," that is, "to punish the wrongdoer and deter others from committing like offenses." The court said the award of punitive damages "bears no reasonable relation to the real damages sustained by plaintiff." Concluding, the court decided that "based both on the lack of evidence of real damage suffered and the reduction in the amount of the compensatory award, . . . the court will reduce the amount of punitive damages to $2,500."

On appeal, the plaintiff contends the trial court erred by remitting both the compensatory and punitive damage awards. He asks that the court's action in ordering the remittitur be reversed and that final judgment be entered in accordance with the jury's verdict.

First, I shall address the issue of compensatory damages. The applicable standard of appellate review to be applied is critical to a resolution of this issue. The development of the present standard in remittitur cases has an interesting history.

Trial courts are clothed with the authority, and charged with the duty, to correct verdicts in damage suits that plainly appear to be unfair. Edmiston v. Kupsenel, 205 Va. 198, 202, 135 S.E.2d 777, 780 (1964). "The use of this authority is but the exercise of the inherent discretion of the trial courts,

limited by the admonitory principle that it is the jury's function, ordinarily, to assess damages." <u>Id</u>.  Prior to 1976, the manner in which the appellate court judged whether the trial court had abused its discretion was to focus on the jury's verdict.  "The crucial question to be determined . . . is whether there was evidence to sustain the verdict of the jury, for if there was, then the trial court was in error in ordering the remittitur."  <u>Id</u>. at 203, 135 S.E.2d at 780.

In 1976, the rule was changed in <u>Bassett</u>, and the present rule adopted.  The basic consideration is still whether there has been an abuse of judicial discretion.  But the manner in which this Court judges abuse of discretion was altered.  From 1976 until today, the focus has been upon the award of the trial court after the remittitur and not upon the verdict of the jury.  Until today, the important number has been the trial judge's number, not the jury's number.

In <u>Bassett</u>, we affirmed a trial court's order of remittitur.  There, the standard of appellate review was at issue.  The plaintiff, seeking reinstatement of the verdict, argued "it is the appellate function to decide whether the jury's verdict was `excessive as a matter of law.'"  <u>Id</u>. at 910, 224 S.E.2d at 331.  The defendant, seeking affirmance of the trial court's reduced award, argued "that the appellate function is to determine whether the order was an `abuse of discretion' on the part of the trial court."  <u>Id</u>.  In ruling on the question, and quoting from <u>Smithey</u> v. <u>Sinclair Refining Co.</u>, 203 Va. 142, 148, 122 S.E.2d 872, 877 (1961), we

emphasized that the "ultimate test" in reviewing a trial court's order of remittitur is whether judicial discretion has been abused.  Bassett, 216 Va. at 911, 224 S.E.2d at 332.

We went on to hold, however, that the manner in which this Court judges abuse of discretion is to focus on the "recovery after remittitur," that is, the trial judge's number and not the jury's number.  We said that when a trial judge has made a finding of excessiveness, has ordered remittitur, and has made "a reasoned evaluation" of the damages as shown by the evidence, the judge's "order will not be disturbed on appeal if the recovery after remittitur bears a reasonable relation to the damages disclosed by the evidence.  `Reasonableness' in this context is the standard by which the exercise of discretion must be tested in this Court."  Id. at 912, 122 S.E.2d at 332.

This focus on the "recovery after remittitur" has been the touchstone of every decision on the subject since Bassett -- until today.  See, e.g., Caldwell v. Seaboard System R.R., Inc., 238 Va. 148, 158, 380 S.E.2d 910, 915 (1989), cert. denied, 493 U.S. 1095 (1990) ("we cannot say the trial court's reduction of the jury's award was unreasonable"); J.W. Creech, Inc. v. Norfolk Air Conditioning Corp., 237 Va. 320, 329-30, 377 S.E.2d 605, 610-11 (1989); Robinson v. Old Dominion Freight Line, Inc., 236 Va. 125, 128-29, 372 S.E.2d 142, 143-44 (1988); Richmond Newspapers, Inc. v. Lipscomb, 234 Va. 277, 301, 362 S.E.2d 32, 45 (1987), cert. denied, 486 U.S. 1023 (1988) ("we will not disturb [the trial court's] finding because `the

recovery after remittitur bears a reasonable relation to the damages disclosed by the evidence'"); Hogan v. Carter & Grinstead, 226 Va. 361, 372-73, 310 S.E.2d 666, 672 (1983); Ford Motor Co. v. Bartholomew, 224 Va. 421, 436, 297 S.E.2d 675, 683 (1982) ("We believe that, in keeping with the rule in Bassett Furniture, the trial judge made a `reasoned evaluation of the damages' and that `the recovery after remittitur bears a reasonable relation' to those damages"); Bunch v. State Highway & Transp. Comm'r, 217 Va. 627, 631, 231 S.E.2d 324, 327 (1977) ("In these circumstances, the award after remittitur bears a reasonable relation to the damages disclosed by the evidence. . . ").

The rule in Bassett is clear. In plain words, a unanimous Court said that our review of the exercise of the trial court's discretion under these circumstances is limited to whether "the recovery after remittitur bears a reasonable relation to the damages disclosed by the evidence." The majority, professing to focus upon the reasonableness of the recovery after remittitur, alludes to a "determination" this Court must make regarding whether "the verdict was excessive." It will be remembered that the party losing the remittitur issue in Bassett argued "it is the appellate function to decide whether the jury's verdict was `excessive as a matter of law.'" Then, the majority proceeds to substitute its judgment for that of the trial court to arrive at a decision it would have rendered had it sat at the trial level.

The precise issue in the present case, in my view, should

be whether the compensatory damage award of $1,000 bears "a reasonable relation" to the damages disclosed by the evidence. I conclude that the amount bears such a reasonable relation.

Of course, the plaintiff is entitled to an award of compensatory damages that includes a sum for presumed injury to reputation even though, as the trial court noted, there was no proof, or inference, that the plaintiff's reputation was diminished in any way by defendant's statements. But this presumed injury is slight. The plaintiff's witnesses said they did not believe defendant's accusations, and held plaintiff in the same high esteem after learning of defendant's charges as before. Moreover, plaintiff suffered no monetary loss, remained employed at DuPont, incurred no diminution in wages or fringe benefits, and continued to be held in high regard by his superiors. Finally, plaintiff presented no evidence that he suffered any physical or emotional injury, except for some embarrassment sustained by good-natured joking of his friends. See The Gazette, Inc. v. Harris, 229 Va. 1, 48, 325 S.E.2d 713, 744-45, cert. denied sub nom. Fleming v. Moore, 472 U.S. 1032 (1985). Thus, I cannot say that an award of $1,000 is unreasonable, considering the evidence.[****]

Next, I shall turn to the issue of punitive damages. Generally, the imposition of punitive damages is not favored and, because they are in the nature of a penalty, they should

---

[****]Citizens of the Commonwealth, especially those supporting a family on a tight budget, will be surprised to learn from the majority that the sum of $1,000 is "a nominal or trivial amount."

be assessed only in cases of most egregious conduct.  Owens-Corning Fiberglas Corp. v. Watson, 243 Va. 128, 144, 413 S.E.2d 630, 639 (1992).  And, the punitive damage award "should bear some reasonable proportion to the real damages sustained and to the measure of punishment required."  Stubbs v. Cowden, 179 Va. 190, 201, 18 S.E.2d 275, 280 (1942).

The majority correctly recognizes that we must determine whether the trial court acted "improperly."  Nevertheless, they determine that the jury's award was not "unreasonable" and is not "an inappropriate punishment" for defendant's conduct.  This is another example of disregard for a settled standard of appellate review.

Certainly, this defendant's conduct was egregious and supported the finding that the statements were uttered with the requisite malice.  However, given the lack of real damages sustained by the plaintiff and considering the sum I would approve for compensatory damages, I cannot say, from a review of this record, that the trial court acted "improperly" in fixing the punitive damages at $2,500.

Consequently, I would affirm the trial court's judgment.